### In re FRIEDMAN.

(Supreme Court, Appellate Division, Second Department.  March 4, 1910.)

STIPULATIONS (§ 18*)—CONCLUSIVENESS.

An attorney, pursuant to a contract with a client, which the client understood, and which was not procured by fraud, recovered $8,000 on her claim for the negligent death of her husband, and paid to her, as agreed, $4,000. Later another was employed by the client to recover from the attorney a further sum of the amount collected, and he agreed to pay, and she to accept, $550 in full settlement. The lawyer insisted that the arrangement be pursuant to an order of the court, whereupon by stipulation an order of settlement on these terms was presented to the court, which refused to sign the order, but after taking evidence ordered the attorney to retain only $2,150 for his services and disbursements. *Held*, that the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court was not bound by the stipulation, and the lawyer, having invoked the court's interposition, cannot complain of the amount awarded him.

[Ed. Note.—For other cases, see Stipulations, Dec. Dig. § 18.*]

Appeal from Special Term, Kings County.

In the matter of the application of Dora Friedman, as administratrix, for an order directing Thomas J. O'Neill, attorney, to turn over certain funds to her. From an order directing him to do so, O'Neill appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, and THOMAS, JJ.

L. F. Fish, for appellant.

Maurice Nagler, for respondent.

THOMAS, J. O'Neill, a lawyer, agreed in writing with Dora Friedman, the petitioner and respondent, to collect from the Brooklyn Heights Railroad Company damages to her and her two children on account of the death of her husband and their father. The contract stipulated that he should keep for his professional services one-half of the sum collected. She was an ignorant woman, and did not speak the English language; but she knew what the agreement was in the regard mentioned. She testified that he agreed to sue for $30,000, and that it was represented to her that she would receive $15,000. Such representation could be only a matter of expectation. Action was brought, and the case was settled very advantageously for $8,000, of which O'Neill took one-half. The petitioner received one-half, and expressed satisfaction. Later O'Neill's clerk, Cohen, left his employment, at the same time stealing and taking away the contract, and O'Neill's investigator also left his service. This pair, having placed the written evidence beyond use, persuaded the petitioner to claim that the agreement for services was one-quarter of the recovery, and Mr. Eno was employed by her to obtain a further sum from O'Neill on the basis of such claim. Eno was convinced in the end that her claim was false to her knowledge, and refused to proceed with her demand. Later several lawyers asserted the claim, and finally one Armin Kohn took up the matter, and his energy, or importunity, or both, influenced O'Neill to consent to make a further payment of $550. Pursuant thereto, in April, 1909, some two years after her receipt of one-half of the recovery, she, under the advice of Kohn, consented to accept the sum of $550 in full settlement; but O'Neill insisted that the arrangement should be pursuant to the order of the court. Thereupon, upon her own and Kohn's affidavits, a proposed order for such settlement was presented to the court. Mr. Justice Carr refused to sign the order, directed that evidence be taken before him, and thereupon ordered O'Neill to retain $2,150 for his services and disbursements, and account to the petitioner for the balance. From that order, O'Neill appeals.

The contract between the parties was not per se fraudulent, nor evidence of improper or undue advantage. One-half of a recovery as contingent payment for legal services may be more beneficial to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

client than to the lawyer. There is no limit to the work he promises. and must render, and his professional services and disbursements rendered and made by him are at his peril, and he has a legal right to make an engagement that has in view the probabilities and hazards in such regard. This is not a question of ethics, of the highest professional proprieties, but of legal action. But the recovery may be such that what was in the first instance a fair contract becomes unfair in its enforcement. The amount of professional services actually rendered should hold some, but not the important, place in this consideration. The quality of the service outvalues the quantity. The expert lawyer, who wins his case without error and without repeated appeals, and makes return to his client with the greater promptness, should not be mulcted in his compensation because he has not exposed his client to harassing and protracted litigation; and so much the more, if his policy and capacity insures swift payment without litigation, should he be approved for merit, rather than penalized for his facility. Nevertheless the recovery may be such that the lawyer's retention of it would be unjustified, and would expose him to the reproach of oppression and overreaching. He is an officer of the court, and is judged as such, and technical contractual rights must yield to his duty as such officer.

O'Neill recognized his relation by refusing final settlement without the court's approval, and the court entertaining the application has fixed the sum which appears to it suitable. The court was not bound by the stipulated further advance of $550. Its duty was not perfunctory. It has allowed one-quarter of the recovery and some disbursements, and as the appellant invoked its interposition he cannot object to its fixing some amount. The amount fixed does not so depart from what would usually be regarded as fair under the circumstances as to challenge criticism.

The order should be affirmed, with $10 costs and disbursements. All concur.