**FARMINGTON DOWEL PRODUCTS CO., Plaintiff, Appellant,**

v.

**FORSTER MFG. CO., Inc., et al., Defendants, Appellees.**

**No. 7711.**

United States Court of Appeals, First Circuit.

Dec. 29, 1970.

**700**

C. Keefe Hurley, Boston, Mass., with whom Earle C. Cooley and Hale & Dorr, Boston, Mass., were on the brief for appellant.

No appearance for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This is an appeal from the order of the district court establishing the maximum ethically permissible fee which can properly be accepted by counsel from the victorious plaintiff, Farmington Dowel, in a civil anti-trust litigation. In its first ruling on the issue of fees, Farmington Dowel Products Co. v. Forster

Mfg. Co., 297 F.Supp. 924 (D.Me.1969), the district court determined that $85,-000 would be a reasonable attorney's fee award under section 4 of the Clayton Act, 15 U.S.C. § 15, but that, since it had learned that the fee arrangement between plaintiff and its counsel provided for a fee of one third of the trebled damages plus any amount awarded under section 4, awarding such amount would result in an excessive fee without benefiting plaintiff. It therefore made no section 4 award, leaving counsel with $109,100, or one third of the trebled damages. On appeal, we noted that the court possessed the power to prevent excessive fees but that it had misread section 4 as precluding any additional fee arrangement. 421 F.2d 61, 87–89 (1st Cir. 1970). We further pointed out that the considerations relevant to a section 4 award were not identical to those bearing on a decision as to the maximum ethically permissible fee, 421 F.2d at 89–90, the latter requiring "its own deliberate articulation of rationale", id. at 91, and remanded the case for inclusion of a section 4 award of $85,000 to plaintiff and for resolution of the issue of the maximum fee ethically allowable.

After receiving counsel's written memorandum and hearing oral argument, the district court by order made reference to Canons 12 and 13 of the Canons of Professional Ethics of the American Bar Association, the Code of Professional Responsibility, Rule 3(e) of the Rules of the District Court of the District of Maine,[1] the factors listed in its prior opinion, 297 F.Supp. 924, 925–928, and the record in the case, concluding "after due consideration of the foregoing" that the maximum ethically allowable fee was $163,650, being 50 percent of the treble damages.

█ Counsel argues that, there having been no prior intimation that the fee agreement was unethical when made, and plaintiff being entirely satisfied with the arrangement, the court cannot

1. Rule 3(e) adopts the Code of Professional Responsibility as the standard of conduct for all attorneys practicing before the court.

retrospectively abrogate such agreement, or errs when it declares the fee resulting therefrom excessive. As we noted in our prior opinion, the acquiescence or approval of the client is relevant but not controlling, 421 F.2d at 90, n. 62. We also took pains not to imply "that an arrangement reasonable when made is thereby insulated from all attack even though it yields a fee out of proportion to the extent or the benefit of services rendered." *Id.* at 89. Indeed, counsel's repeated and exclusive characterization of the action of the court as holding that the fee *agreement* was unethical seems to us either untowardly sensitive or disingenuously calculated to appeal to the respect which a court has for able counsel. The very fact that post-agreement factors such as complexity of problems, quality of work, and results obtained are properly considered indicates that the judgment of the court is directed at what amount it is ethical to receive, not at what share it is ethical to agree upon.

■ Nevertheless, counsel is entitled, we think, to a more "deliberate articulation of rationale". *Cf.* Rule 52(a), F.R. Civ.P. While such an exercise in restrained hindsight is not likely to placate disappointed counsel, it is necessary if there is to be any possibility of disciplined and informed review of the court's admittedly broad but not limitless discretion. Particularly here, where court intervention in fee dispositions is bound to be confined to exceptional circumstances, some articulation is called for. We acknowledge that it would be neither practicable nor useful for a court to rehearse a detailed post-mortem of a lengthy and complex litigation. What we would expect, however, is some appraisal of the factors underlying the court's decision to declare less than the amount resulting from the fee agreement as the maximum which could ethically be received.

In this case, for example, counsel entered the litigation after three and one half years of proceedings before the Federal Trade Commission had resulted in an initial decision of a hearing examiner. The bearing, if any, of this prior history on the prospects of success might be examined, as well as counsel's contribution to two subsequent Federal Trade Commission opinions and their impact. Another area for evaluation is the difficulty posed by the statute of limitations problem faced by counsel in the light of then existing authorities, involving a high risk—soon to become an actuality—of summary dismissal of the major part of plaintiff's case, but with correspondingly low prospects of extensive trial involvement. Also worthy of consideration is the fact that counsel's threshold problem was solved almost three years later by Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405 (1965).[2] At this point, with new life breathed into the case, the possible impact of *3M* on plaintiff's prospects of introducing portions of the Federal Trade Commission order as *prima facie* evidence might also be relevant —as well as consideration of the extent to which ultimate realization of these prospects was helpful. Still another area for consideration by the court might be the effectiveness with which plaintiff's case on damages was presented, the difficulties encountered, and the results obtained.

We do not mean to say that these are all the significant issues to address in bringing to bear a balanced and reasoned scrutiny resulting in what must be ultimately a fair and sensitive ethical

2. We do not mean to imply counsel did nothing to advance the cause in the interim. The docket entries reveal action on plaintiff's request for admissions and interrogatories, and the taking of depositions. We are also aware that, a year after the court granted partial summary judgment for defendant, it certified that its order, based on its view of the non-applicability of the tolling provision, section 5(b), of the Clayton Act, 15 U.S.C. § 16(b), to Federal Trade Commission proceedings, involved a controlling question of law. Plaintiff sought and we denied permission to appeal under 28 U.S.C. § 1292(b).

judgment of the maximum amount which counsel's services and the results of the litigation merit. But they illustrate the kind of particularity which we think should characterize this kind of decision. While we are reluctant to delay further the termination of this litigation, the novelty and importance of this kind of decision-making convince us of the wisdom of remanding for a reconsideration of the fee issue and more precise articulation of reasons for the court's conclusion.

Reversed and remanded for further proceedings consistent with this opinion.