## McKENZIE CONSTRUCTION, INC., Appellant,

v.

## Desmond L. MAYNARD.

### No. 84–3048.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1984.

Decided March 25, 1985.

Wallace L. Walker, Philadelphia, Pa., for appellant.

Alicea Suarez (argued), Albert A. Sheen, Christiansted, St. Croix, V.I., for appellee.

Before SEITZ, GIBBONS and SLOVI-TER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

Plaintiff, McKenzie Construction, Inc., appeals from a judgment of the district court refusing to set aside as unreasonable a contingent attorney fee agreement with the defendant, Desmond L. Maynard. The District Court of the Virgin Islands, as a court of general original jurisdiction, has subject-matter jurisdiction pursuant to 48 U.S.C. § 1612 (1982). This court has jurisdiction under 28 U.S.C. § 1291 (1982).

### I.

The plaintiff is a construction firm in the Virgin Islands. James H. King ("King") as president of and on behalf of plaintiff, entered into a construction contract with the government of the Virgin Islands to renovate one of the government's hospitals for the sum of $588,000.

After a substantial portion of the work had been performed, the Government of the Virgin Islands notified King that the plaintiff's contract was terminated because plaintiff, which King apparently owned, would not be financially able to continue the work and complete the contract in timely fashion.

The plaintiff then retained an attorney other than the defendant. This attorney was unable to obtain a preliminary injunction to prevent the termination of plaintiff's work on the contract. King decided to employ another attorney and went to see the defendant. King advised defendant of the history of the problems with the project and his belief that the project was approximately 60% completed and that a large sum was still owing under the contract for work completed. They discussed attorney's fees and defendant stated that if he took the case on an hourly basis his rate would be $60.00. King apparently indicated that he had no money to pay on an hourly basis.

Several days after the initial meeting, on November 24, 1978, King and defendant met again. Defendant presented a contingent fee agreement which King signed. It provided, inter alia, that plaintiff retained defendant "to prosecute on its behalf ... an action for debt and/or breach of contract," and that plaintiff would pay a contingent fee of one-third of any recovery from judgment or settlement. The district court found that King, as an experienced and knowledgeable businessman, was aware of the nature of the contingent fee agreement.

Defendant negotiated with the government for about a year in an attempt to settle. Finally, on August 27, 1979, through defendant's efforts, King, for plaintiff, and the government agreed to a settlement of $195,000. This approximated the unpaid portion of 65% of the contract price. When King and defendant met to dispose of the proceeds of the $195,000 settlement check, King saw from the settlement sheet that defendant's fee of about $65,000 plus expenses would come off the top. Next, payments to certain creditors and subcontractors were made directly by the defendant out of the settlement fund. It appeared that King had other personal creditors and the balance plaintiff was to receive apparently would not fully cover their claims.

King asked defendant to reduce his fee from some $65,000 to $16,000. Defendant refused but agreed to consider a reduction in fee. Thereafter, defendant offered to reduce his fee by about $10,000 but King reacted negatively and commenced this action to recover a portion of the fee which defendant had retained.

After a bench trial, the district court concluded that based on time sheets, if the defendant had charged his hourly rate of $60, his services would have been worth about $4,000. In fact, as the evidence indicated, the defendant devoted about 83 hours to this cause. If so, the defendant's services may have been worth about $5,000. Instead, the defendant received more than $65,000 or about $790 per hour. The court nevertheless concluded that while it was uncomfortable with the $65,-000 fee due under the contingent fee agreement, it could not find under the circum-

stances that plaintiff had carried its burden of showing that the fee was clearly excessive. The plaintiff then appealed.

## II.

■ At the outset we must consider plaintiff's contention that the district judge abused his discretion by failing to recuse. During the course of the trial, the district judge realized and advised counsel that, while a practicing attorney, he had instituted and participated in the settlement of an action against plaintiff for a client who was a creditor subcontractor of plaintiff on plaintiff's job to renovate the hospital.

No application to recuse, however, was made to the judge. Moreover, and of decisive significance, we can discern no factor in the district judge's prior representation that would have impinged in the slightest on his objectivity in deciding the merits of this action. We find no abuse of discretion.

## III.

We come now to the merits of this controversy which the parties tacitly agree are controlled by Virgin Islands law. The plaintiff does not contest that a contingent fee agreement is permissible in the Virgin Islands, at least in the present context. The defendant does not challenge the district court's authority, whether based on its equitable jurisdiction or under its inherent power to regulate attorney-client relations, to determine the reasonableness of a fee resulting from the application of a contingent fee agreement. *See Schlesinger v. Teitelbaum*, 475 F.2d 137 (3d Cir.1973), *cert. denied*, 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973). They disagree, however, as to the correct legal standards to be employed by the district court in making a determination of unreasonableness. Finally, the parties are in accord that in reviewing the district court's determination of the reasonableness of a particular fee, this court must determine whether there was an abuse of discretion.

■ The first error plaintiff attributes to the district court is its determination that the plaintiff had the burden of proof in its attack on defendant's fee. Plaintiff says that in an attorney-client dispute over fees, the burden is on the attorney, even if the client is the plaintiff suing to recover fees already paid. We agree. An attorney has the burden of proof as to the reasonableness of his fee when he sues to recover from his client. This allocation of the burden of proof is premised on the relationship of trust owed by a lawyer to his client, with a concomitant obligation to charge only a reasonable fee whether the arrangement be contingent or otherwise. This approach is at the very heart of the special relationship between attorney and client. *See Dunn v. H.K. Porter Co., Inc.*, 602 F.2d 1105, 1113 (3d Cir.1979). Nor do we think the essential burden is shifted to the plaintiff in this case because of the mere happenstance that the client was required to initiate the action. We therefore conclude that it was error to place on the plaintiff the burden of showing the reasonableness of the fee.

■ We turn now to plaintiff's contention that the district court committed error by requiring it to prove that the fee was "clearly excessive" rather than "unreasonable" in order to succeed. Since we have determined that the burden of proof rests on the defendant attorney rather than the plaintiff, the issue properly posed here has to do with the measure of his burden. The district court applied the "clearly excessive" standard which is the standard for an ethical violation under Disciplinary Rule 2–106(A) of the ABA Model Code of Professional Responsibility. However, we are convinced that in a civil action, a fee may be found to be "unreasonable" and therefore subject to appropriate reduction by a court without necessarily being so "clearly excessive" as to justify a finding of a breach of ethics. We do not believe that the standards under the court's duty to monitor fee agreements and the court's duty to discipline attorneys are necessarily the same, or serve completely identical purposes.

The ethical rules spring from the belief that certain kinds of behavior cannot be

tolerated by a society of professionals. This is seen from a reading of Disciplinary Rule 2–106(B) that recites that "[a] fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." The quoted language is formulated in terms of a lawyer's firm conviction. Under certain circumstances, it may be unfair to sanction or discipline an attorney for a fee that can be called objectively "unreasonable," but not "clearly excessive," especially if the unreasonableness is due to factors that occur after the fee arrangement is made.

▮ In contrast, when the matter is the enforcement of a fee contract in an adversary proceeding between an attorney and his former client, we do not believe a judge's determination of unreasonableness should be based on as stringent a showing. In the latter case the court is not deciding whether a lawyer's conduct is unethical but whether, as against the client, it has resulted in such an enrichment at the expense of the client that it offends a court's sense of fundamental fairness and equity. *See Dunn v. H.K. Porter Co., Inc., supra; Allen v. United States,* 606 F.2d 432, 435 (4th Cir.1979). We conclude, therefore, that the district court should have determined this action under an equity and fairness standard rather than under the more demanding standard required to prove an ethical violation.

Finally, we consider the proper factors that a district court should evaluate in determining the reasonableness of a fee agreement. The plaintiff contends that the district court erred by limiting his consideration to "circumstances which existed at the time the agreement was entered into." *Haverstock v. Wolf,* 491 F.Supp. 447, 454 (D.Minn.1980) (Minnesota law). *See also Brobeck, Phleger & Harrison v. Telex Corp.,* 602 F.2d 866, 875 (9th Cir.) (California law), *cert. denied,* 444 U.S. 981, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979).

▮ We believe that the district court had too narrow a view. Because courts have a special concern to supervise contingent attorney fee agreements, they are not to be enforced on the same basis as ordinary commercial contracts. *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1108. This concern certainly extends to the performance of the attorney's contractual obligations as well as to the circumstances surrounding the engagement of the attorney. For example, the results obtained, the quality of the work, and whether the attorney's efforts substantially contributed to the result are all factors that have been used by courts in reviewing the reasonableness of contingent fees. *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1110; *Krause v. Rhodes,* 640 F.2d 214, 220 (6th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Farmington Dowel Products Co. v. Forster Manufacturing Co.,* 436 F.2d 699, 701 (1st Cir.1970). *See also* ABA Code of Professional Responsibility, DR 2–106 (1979) (adopted by 5 V.I.C.App. V R. 57(e) (1982)). Further, events may occur after the fee arrangement was made so that "[a] contingent fee arrangement '[that] ... was in the first instance a fair contract becomes unfair in its enforcement.'" *Krause,* 640 F.2d at 220 (setting aside a contingent fee contract because of events occurring after the execution of the contract) (quoting *In re Friedman,* 136 A.D. 750, 121 N.Y.S. 426, 428 (1910)). While the reasonableness at the time of contracting is a relevant consideration, it is not the only one. We, therefore, conclude that the rule announced by the district court contained legal error to the extent that it excluded relevant factors other than those existing at the time the fee agreement was executed.

▮ Having recognized that the circumstances surrounding both negotiation and performance should be examined, we also emphasize that courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties. *Dunn v. H.K. Porter Co., Inc.,* 602 F.2d at 1111–12. Further, a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of

justice. It should therefore be the unusual circumstance that a court refuses to enforce a contractual contingent attorney's fee arrangement because of events arising after the contract's negotiation. Nevertheless, the district court must be alert to fees where "the lawyer's retention of it would be unjustified and would expose him to the reproach of oppression and overreaching." *In re Friedman,* 136 A.D. 750, 121 N.Y.S. 426, *aff'd mem. op.,* 199 N.Y. 537, 92 N.E. 1085 (1910); *Krause v. Rhodes,* 640 F.2d at 220.

We fully appreciate that the reasonableness standard, when employed in an attorney-client fee dispute is, by its very nature, difficult to define, much less apply. As a factual dispute in this area fades into the gray area, reasonable judges will disagree. Use of an abuse of discretion standard by this court is but a pragmatic judicial solution to a problem heavily implicating subjective judgment. However, in this case, because our disagreements with the district court go to the proper standards and burden of proof rather than its judgment of reasonableness, we believe the interests of justice dictate that the district court should be afforded an opportunity to find the facts in light of the correct legal standards.

## IV.

The judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion, including, if needed, a further hearing.

GIBBONS, Circuit Judge, concurring:

I join in the decision vacating the judgment of the district court and remanding for further proceedings. I write separately, however, out of concern over the implications of several of the majority's rulings.

The majority holds, and I agree, that in litigation over the amount of an attorney's fee, the burden of establishing the reasonableness of the fee rests on the attorney, even in circumstances in which the client is required to initiate the action. Since the trial court improperly allocated the burden of proof by requiring the client to prove the

unreasonableness of the fee, a remand for reconsideration is required.

The majority also holds that in a dispute over fees claimed to be due under a contingent fee agreement, the "clearly excessive" standard for violation of Disciplinary Rule 2–106(A) of the American Bar Association Model Code of Professional Responsibility is not the appropriate standard for determining the reasonableness of the fee. Instead, the majority lays down an "equity and fairness" standard which, in addition, is to be applied by considering not only the circumstances at the time of the contract, but also the circumstances as they existed at the time of the attorney-client dispute.

This is not a case such as *Schlesinger v. Teitelbaum,* 475 F.2d 137 (3d Cir.), *cert. denied,* 414 U.S. 1111, 94 S.Ct. 840, 38 L.Ed.2d 738 (1973), in which the court is asked to exercise supervision over the fees charged to persons regarded as wards of the court. Nor is this a fund-in-court case such as *Dunn v. H.K. Porter, Inc.,* 602 F.2d 1105 (3d Cir.1979), in which class members with whom no contractual arrangements were made may be affected by the enforcement of a contingent fee agreement between a class representative and certain class members. Rather, this case involves an arm's-length agreement between a sophisticated businessperson and an attorney who offered to undertake the representation at issue on a non-contingent basis. My concern is that by rejecting the "clearly excessive" standard of Disciplinary Rule 2–106(A) and by focusing the inquiry upon the circumstances existing after a successful result has been achieved, the court will invite litigation over most contingent fee arrangements. The common law of the Virgin Islands and of most American jurisdictions recognizes that competent persons are free to contract for legal services on terms that are mutually satisfactory to the client and the lawyer, including terms in which the attorney's compensation depends upon a successful outcome. No responsible member of the profession would, I believe, contend that such contractual arrangements are beyond

the reach of judicial scrutiny. The difficulty lies in determining a degree of judicial scrutiny which will strike the appropriate balance between competing interests. One one hand, judicial control over attorney-client fee contracts is required for the preservation of public confidence in the legal profession, and to prevent abuse of the Bar's monopoly in the practice of law. On the other hand, a degree of scrutiny which subjected every fee contract to an after-the-event examination by the court would, I fear, limit the undoubted utility of contingent fee arrangements, by substituting a court-determined fee for that which was bargained for by the parties.

In fund-in-court cases and those involving wards of the court, judicial scrutiny is undoubtedly required. But case law growing out of those unique situations tells us little or nothing about an appropriate level of scrutiny which ought to apply when the client is a competent contracting adult.

The majority's distinction between a common law standard of reasonableness and the "clearly excessive" standard of the Code of Professional Responsibility is plausible. Conceivably, courts will be reluctant to set aside a contingent fee contract when the consequence is to brand the attorney as a violator of the governing rules of professional responsibility, and who would be liable to sanction by an appropriate disciplinary organization. But the "equity and fairness" standard is one which for me is so imprecise as to invite an attempt to obtain a judicial determination of the fee in almost every instance of a successful outcome. If that vague standard were to be applied by examining the circumstances known to the parties at the time of the agreement, it would probably be tolerable. However, so vague a standard, applied with the benefit of hindsight following a successful outcome, seems likely to open a Pandora's box of new attorney fee disputes. In statutory fee cases, fund-in-court cases, and cases involving wards of the court, we have developed a significant body of case law dealing with fee disputes. The "equity and fairness" standard here adopted will in all likelihood be given content by reference to the standards of reasonableness developed in those different contexts.

The legislature of the Virgin Islands, and perhaps the Courts of the Virgin Islands, could impose restraints upon the freedom of lawyers to contract for contingent fees. *See, e.g.,* N.J. Court Rule 1:21–7. Absent such legislative restraints, however, fixing contingent fees should be left primarily to contract. I would enforce such a contractual arrangement if, based on the circumstances known to the parties when it was made, the fee does not exceed the outer limits of reasonableness. That is certainly close to, if not the same as, the standard in Disciplinary Rule 2–106(A).