**McKENZIE CONSTRUCTION, INC., Plaintiff**

v.

**DESMOND MAYNARD, Defendant**

Civil No. 1980/61

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 12, 1986

WALLACE L. WALKER, ESQ., Philadelphia, PA, and GEORGE CANNON, ESQ., St. Croix, V.I., *for plaintiff*

ALBERT A. SHEEN, ESQ., St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

We must decide in this case whether a contingent legal fee agreement between the parties was reasonable and if so, whether there were any changes in circumstances after the fee agreement was negotiated, which would render it unfair or inequitable. We find the one third fee was reasonable when agreed upon, and nothing occurred thereafter which made it unreasonable. The plaintiff's complaint will be dismissed with prejudice.

## I. THE CASE ON REMAND

This Court originally ruled in favor of the defendant Desmond Maynard ("Maynard") in McKenzie Constr., Inc. v. Maynard, 20 V.I. 207 (D.V.I. 1983). On appeal by the plaintiff ("McKenzie"), the Third Circuit remanded, with instructions to make further findings of fact on the basis of its opinion. See McKenzie Constr., Inc. v. Maynard, 758 F.2d 97, 99–102 (3d Cir. 1985). We were instructed to consider the following:

(1) The applicable standard in an attorney fee dispute is the reasonableness of the fee, applying principles of equity and fairness.

(2) An attorney bears the burden of proof to demonstrate that his or her fee is reasonable, whether the action is initiated by the attorney or the client.

(3) Consideration should be given to circumstances existing at the time the arrangement is entered into, and thereafter, to the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result.

(4) Consideration should also be given to whether events occurred after the fee arrangement was made which rendered a contract fair at the time unfair in its enforcement.

The Third Circuit then cautioned:

> Having recognized that the circumstances surrounding both negotiation and performance should be examined, we also emphasize that courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and

competent parties. Further, a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice. *It should therefore be the unusual circumstance that a court refuses to enforce a contractual contingent attorney's fee arrangement because of events arising after the contract's negotiation.* (Emphasis added.)

McKenzie Constr., Inc. v. Maynard, 758 F.2d 102.

## II. FACTS

In 1977, McKenzie won the government contract for renovation of the Frederiksted Hospital in St. Croix. This work was of great importance to the government because of the medical needs of the people of the western end of St. Croix, and the political value to be derived from completion of the renovation of this historic site. McKenzie hired subcontractors and worked on the project until May 12, 1978, when it was terminated.

Upset with the termination, McKenzie retained the services of an attorney who brought an injunction action in court. That effort failed. McKenzie then met with Maynard and they discussed retention of Maynard as counsel to McKenzie. Apparently, McKenzie felt that it had completed a greater percentage of the work on the hospital than it had been paid for, and it also considered that it had a claim for loss of profits. It also wanted to go back on the job.

On November 22, 1978, the parties entered into a written retainer agreement under which Maynard was to receive one third of any sums he was able to obtain from the government in favor of McKenzie. As of that date, McKenzie had received $217,000 of the total $627,000 contract price, or 34%. It maintained that it had completed at least 60% of the total, which if correct would mean that it had at least another $160,000 coming under the contract.

Maynard had previously offered to perform the work for a fee of $60.00 an hour, with $5,000 as an advance. But McKenzie was so strapped for money it could not afford the hourly rate with an advance retainer. Only then was the one third contingent fee arrangement arrived at.

McKenzie also owed a considerable amount of money to subcontractors and others who had not been paid while the job was ongoing. In fact, one of the reasons for termination was its failure to pay subcontractors. When the retainer agreement was signed, the evidence indicates that McKenzie furnished Maynard with a list

of creditors to whom it allegedly owed $129,402.27. Two months later, McKenzie gave Maynard an updated list, increasing the amount to $132,180.33. Fourteen months after he had been retained, at the time of distribution of the settlement proceeds, Maynard was presented with still another list of alleged creditors, to whom McKenzie claimed was owed $161,516.57.

Since McKenzie had been terminated six months before it even approached Maynard, or about twenty months before the January 1980 settlement meeting, it can be presumed that it had accurate knowledge of the debts it owed at that time. No satisfactory explanation was ever given why the claimed debts owed to creditors increased as time passed, even though the job was terminated. There is no claim of ongoing bank interest payments which substantially increased the debt, nor other continuing charges of an escalating nature.

The modifications in the list of creditors and the amounts allegedly owing them are the only changed circumstances from the time of contract to the time of settlement which might affect the reasonableness of the fee. We discuss this further in the next section.

In any event, Maynard went to work for McKenzie. And, after a year of prodding and wheedling, he obtained a settlement satisfactory to McKenzie. The corporation received a settlement of $195,887.46, together with $5,000 toward its attorney's fees. Maynard then calculated his one third fee and came up with the sum of $65,295.00 owed to him, together with an additional $1,474.25 for expenses.

When McKenzie's president King appeared at Maynard's office in January 1980, and was confronted with Maynard's calculation, he was enraged. He took the position that (1) he had never agreed to pay one third, had never read the retainer agreement and did not receive a copy until that very day and (2) Maynard did not produce what he promised, i.e., to help him get back on the project, and to obtain the profits McKenzie allegedly lost by reason of termination.

To Maynard, "a deal was a deal." He claimed he had worked patiently and overcome heavy resistance on the part of the government to any payment at all. He testified that the government did not believe the percentage of completion was anywhere near McKenzie's claimed 60–65%, and that much of the work was shoddy. Nonetheless, Maynard asserted, he was able to get

McKenzie far more in a settlement than it had anticipated. Although he offered to shave a small portion of the fee, he insisted on payment pursuant to the contingency fee agreement. He had succeeded, he insisted, where others had failed.

McKenzie considered a fair fee to be $15,000 to $16,000. At trial, Maynard's time sheets indicated $4,000 worth of time involved in the matter. Agitated and dissatisfied, King of McKenzie left Maynard's office, marched to the office of another attorney, and this action was launched.

## III. DISCUSSION

Applying the standards enunciated by the Third Circuit on remand of this case, discussed supra, we find that the fee arrangement between the parties was reasonable at the time it was entered into, and there were no circumstances which occurred after it was made which rendered the contingent fee contract unfair in its enforcement.

At the close of the hearing on January 13, 1986, when the Court received further evidence, counsel presented final argument. Counsel for McKenzie, at that time, conceded that the fee of one third of the settlement amount was fair at the time the parties entered into it. The final brief submitted by counsel, however, challenges the fee arrangement from its inception. He suggests that a percentage fee on a sliding scale would be fair. He cites The Commercial Law League of America as favoring such a method. We note, however, that this organization no longer has a recommended rate schedule. The Credit Manual of Commercial Laws (1985), page 23-15. This manual is published by the National Association of Credit Management. At the same page it states:

> To avoid any problem it is advisable for a creditor to establish the rates that may be charged by an attorney in a collection matter at the time the matter is referred. . . . Therefore, each attorney and creditor must make his own arrangement.

In finding the one third fee reasonable at the time it was entered into we consider the fact that McKenzie's president was an experienced businessman who had negotiated his own contracts and actually drawn a few of them himself. He had already been to another attorney before Maynard with negative results. His corporation had no funds to advance a retainer against an hourly fee. It had been terminated from the job, and the government was

248

taking a difficult position about payment. The government had hinted at a claim against McKenzie for sloppy workmanship. Despite counsel's insistence that this was a mere collection case, the evidence indicates that the possibility of collecting any money for McKenzie would require overcoming the government's strong resistance. Not to be overlooked is the further fact that McKenzie's president had antagonized the architect and various government officials in his approach to their complaints.

■ For all these reasons, and because McKenzie's president was no babe in the woods when it came to these matters, we find that the contingent fee agreement of one third was reasonable when entered into.

■ Certainly the results obtained were satisfactory as well. As stated above, Maynard obtained more than $200,000 in settlement without the need to litigate the case. He substantially contributed to that result for one very important reason: he knew that he would have to patiently negotiate with the government without going to court, and without appearing to be anxious to settle. McKenzie's counsel at final argument suggested Maynard should have been willing to take the matter to trial. But, as an off-island attorney, he did not recognize that a judgment against the government would probably be worthless. The wise attorney always presses the government to a settlement which includes payment. In this regard, Maynard pushed the government to the logical settlement limits.

This brings us to the last of the criteria the Third Circuit required to be considered: whether circumstances after the arrangement was entered into had occurred which rendered the contract unfair in its enforcement. As discussed earlier, the only possible circumstance which occurred was the increase in the claimed debts of McKenzie from $129,402.27 at the time of the fee agreement to $161,516.57 at the time of settlement.

James King, president of McKenzie, admitted that of the estimated forty-four creditors he claimed were owed money from the hospital job, very few of them filed any lawsuit seeking debt recovery. This fact, combined with our dim view of Mr. King's credibility, leads us to believe that the list of creditors and the amount of the claims was significantly exaggerated. It also appears that many of the subcontractors McKenzie claimed as creditors were probably paid by the government or McKenzie's successor on the job.

249

For instance, King claimed that the Spanall Company was owed $20,000 for rental of equipment to shore up the old walls and floors of the building. Spanall Company never sued McKenzie. In fact, its shoring equipment remained on the job after he left, since it could not be removed without structural collapse, and was used by McKenzie's successor. Obviously, any claims by Spanall were covered by either the government or the successor contractor, to obtain continued use of the equipment.

We believe that King kept puffing up the claims of creditors to obtain a larger settlement from the government. He then used the same figures to argue against Maynard's fee of one third of the recovery, claiming it would negate the ability of McKenzie to pay off all creditors' claims. Other than the list of creditors and amounts allegedly owed which was prepared by King, McKenzie submitted virtually no corroboration in support of most creditors' claims.

■ We do not accept the McKenzie claim that Maynard's fee negated the ability to pay creditors, and we do not find that there were any changed circumstances after the fee arrangement was agreed upon which would cause us to alter the reasonable contingent fee.

## CONCLUSION

By reason of the findings herein, the complaint of the plaintiff will be dismissed with prejudice.

## JUDGMENT

THIS MATTER is before the Court after a bench trial which concluded January 13, 1986. The Court having entered its memorandum opinion of even date herewith, and the premises considered, now therefore it is

ORDERED and ADJUDGED:

THAT judgment is hereby entered in favor of the defendant and against the plaintiff and the complaint of the plaintiff is DISMISSED WITH PREJUDICE; and

THAT the parties will each bear their own costs and attorneys' fees.