**ALLAN A. CHRISTIAN, Plaintiff/Appellant**

v.

**MARY O. JOSEPH, Defendant/Appellee**

Dist. Ct. Civ. No. 1986/47

Terr. Ct. Civ. No. 505/1984

District Court of the Virgin Islands

Div. of St. Croix

Appellate Division

April 30, 1987

GREGORY E. MILLER, ESQ., St. Croix, V.I., *for appellant*

JUDITH L. BOURNE, ESQ., St. Thomas, V.I., *for appellee*

CHRISTIAN, *Presiding Judge*; O'BRIEN, *District Judge*, and FEUERZEIG, *Territorial Court Judge*

## OPINION

PER CURIAM

This appeal requires us to determine whether the Territorial Court erred in setting aside as unreasonable a contingent attorney's fee agreement as well as a separate retainer agreement. If the court properly voided the contingency fee agreement, we also must decide whether the court erred in fixing the amount of compensation the attorney should receive for his services.

### I.

Sometime in March of 1978, Mary O. Joseph, a 61-year-old widow suffering from severe arthritis, consulted Allan A. Christian, an attorney admitted to practice before the courts of this jurisdiction. She went to him concerning, among other things, six pieces of real property that she had been left by her late husband and of which she believed Brojal International Corp. (Brojal) had defrauded her. As a result, Mrs. Joseph retained Christian to represent her to sue Brojal. In their initial discussions, Mrs. Joseph indicated that she did not have any money immediately available because her assets and income were tied up in Brojal. Christian indicated he did not

know what the total legal fees would be, but he did obtain a $250 retainer fee. Later, they again discussed attorney's fees and costs and Mrs. Joseph was advised that money was needed to cover the costs of litigation. Consequently, she agreed to turn over to Christian Plot 31, Estate Whim, Frederiksted, for him to sell and use the proceeds to cover debts and expenses incurred on her behalf. In fact, Christian sold four plots of land in Estate Whim and collected $16,800. In addition, he sold other property owned by Mrs. Joseph located in Estate Calquohoun, St. Croix, and collected rent on the Calquohoun properties. Based upon his own accounting, Mr. Christian collected $24,900.45 from the sale and rental of Calquohoun land.

Still later, Mrs. Joseph signed a contingency fee agreement dated February 27, 1979, by which she agreed to pay Christian 33 1/3 percent of any recovered judgment in the Brojal action. During the pendency of the Brojal litigation, Mrs. Joseph encountered other legal problems, which Christian also handled for her. These included defending her in an action brought by the Royal Bank of Canada to foreclose on Mrs. Joseph's home, filing three eviction actions on behalf of Mrs. Joseph, bringing about the return of Mrs. Joseph's daughter, who was incarcerated in Lewisburg, Pennsylvania, and several other miscellaneous matters.

Through the efforts of Christian, the Joseph v. Brojal International Corp. suit was terminated on January 25, 1980, by a default judgment entered by the District Court. This was as a result of the failure of the defendant Brojal to comply with certain discovery requests. Consequently, judgment in the amount of $123,000 was entered in favor of Mrs. Joseph. That judgment, however, was appealed to the United States Court of Appeals for the Third Circuit, which affirmed. The matter did not end there because a petition for a writ of certiorari was filed with the United States Supreme Court, which petition was denied. With the filing of the appeal to the Third Circuit, though, Christian wrote Mrs. Joseph advising her that his fee for handling the appeal would be $2,500. Hindsight subsequently took over and on November 28, 1980, he wrote Mrs. Joseph he was increasing his fee for handling the appeal to $4,500 because it was no longer "economical" for him to charge only $2,500. A retainer agreement in the amount of $4,500 was sent in December to Mrs. Joseph, which she signed on February 10, 1981.

During the entire period that Christian represented Mrs. Joseph, he acknowledges receiving $41,745.00, either on behalf of Mrs. Joseph or in payment of fees and expenses in connection with his representation of her. In addition, he received two parcels of land, 12AD Calquohoun, valued at $8,500, and 47A Hospital Street, Frederiksted, valued at $12,500. Despite receiving these properties and monies, Christian insisted that Mrs. Joseph still owed him $4,500 pursuant to his retainer agreement for his representation of Mrs. Joseph in handling the Brojal appeal to the Third Circuit Court of Appeals and the Supreme Court of the United States.

In an effort to resolve the fee dispute, Christian met with Mrs. Joseph and her son Cepheus Rogers. Despite Christian's contention that a settlement was reached, that settlement was never consummated. As a result, Christian on March 30, 1984, sued Mrs. Joseph for $4,561.60 plus interest from April 15, 1983. She counterclaimed for an accounting of the attorney's fees he deducted from funds which he held as a fiduciary of Mrs. Joseph, for recovery of all sums due as a result of Christian's management of her property, and for excess legal fees paid to him.

After a two-day trial, the Territorial Court on May 1, 1986, rendered a Memorandum Opinion and Judgment. In that opinion, applying the teachings of McKenzie Construction, Inc. v. Maynard, 758 F.2d 97 (3d Cir. 1985), the court voided the contingency fee agreement between Mrs. Joseph and Christian as unreasonable. The trial court also found that Christian had failed to substantiate the reasonableness of the $4,500 he was seeking as attorney's fees for representing Mrs. Joseph in handling the Brojal appeal and also voided that agreement. The trial judge further concluded that Christian spent approximately 2,500 hours on the Brojal matter—including the trial and the appeal—and, based upon his 1978 hourly rate of $75.00, determined that he was entitled to $10,000 in attorney's fees. In addition, the court found that Christian had breached his fiduciary duty by misusing the funds collected on Mrs. Joseph's behalf by failing to keep records of the money he received or disbursed. Based upon the accounting given to the court during the course of the proceedings below, the court determined that Christian had accounted for $31,751.77 of the $41,745 that he received on behalf of Mrs. Joseph. After adding $21,000 for the two parcels that Christian received, the court concluded that Christian had received $62,745. Because Christian accounted for only

$31,751.77 and the court found that he was entitled to only $10,000 in attorney's fees for the Brojal matter, the court entered judgment on behalf of Mrs. Joseph for the difference of $20,993.23. This appeal by Christian followed.

## II.

Initially, we must determine whether the trial court erred in holding that the contingency fee agreement of the parties was unreasonable. Believing that the trial court appropriately relied on and correctly applied McKenzie Construction, Inc. v. Maynard, supra, this court concludes that the trial court made no error in voiding the contingency fee agreement.

■ Under Mckenzie, an attorney has the burden of proving the reasonableness of his fees, even if the client is suing to recover fees already paid. Id. 758 F.2d at 101. The trial court found that Christian failed to meet this burden and that finding is not clearly erroneous. Leeper v. United States, 756 F.2d 300 (3d Cir. 1985).

Christian, however, argues that there was insufficient evidence to support the Territorial Court's findings. First, he argues that the trial court erred in finding that the contingency fee agreement was not entered into and signed by Mrs. Joseph until February of 1979. Although it was never raised during the trial, the appellant correctly notes that the contingency fee agreement is dated February 27, 1979, while the notary seal was affixed on February 27, 1978. He now, therefore, argues that the actual date of the agreement is the date the notary affixed his seal. There was more than ample testimony, however, to support the finding of the trial court that Christian and Mrs. Joseph had an ongoing relationship for almost a year before the agreement was signed. More importantly, there was no evidence before the trial court that would permit this court to set aside that finding. This is because the record is void of any evidence of a meeting between Christian and Mrs. Joseph in February of 1978. In fact, their first meeting was no earlier than March of 1978.

The finding as to the date of the agreement is crucial to the trial court's determination that the contingency fee agreement was unreasonable. This is because of the additional finding that at the time the contingency fee agreement was signed Christian was collecting proceeds from the rental and sale of Mrs. Joseph's properties, and that as a real estate broker Christian had full

knowledge of the value of the properties and the amount he would realize from their sale, thus affording him knowledge that a contingent fee was not necessary.

■ In addition, the trial court concluded that when the agreement was signed any fair and competent analysis would have indicated that sufficient monies would be collected to pay fees for the Brojal matter on an hourly basis as well as the costs of litigation and other expenses incurred such as taxes and insurance. That, coupled with Mrs. Joseph's age, her lack of sophistication, her arthritic condition and her complete trust in Christian, weighs even more heavily against setting aside the trial court's finding that the contingent fee agreement was unreasonable. To the contrary, this court is bound by Rule 52(a), Fed. R. Civ. P., which requires that findings of fact shall not be set aside unless clearly erroneous after due regard is given to the opportunity of the trial court to judge the credibility of the witnesses. A "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).

■■ The trial court correctly stated and applied the test that must be met under McKenzie with respect to the burden of proof and the facts that must be considered in analyzing the reasonableness of a contingency fee agreement. While recognizing that "courts should be reluctant to disturb contingency fee arrangements freely entered into by knowledgeable and competent parties," Id. 758 F.2d at 101, we cannot conclude that the trial court clearly erred in holding that the contingency fee arrangement entered into by the parties was unreasonable.

### III.

While finding that there is sufficient evidence in the record to support the invalidation of the contingency fee agreement, we are forced to conclude that the trial court failed to make appropriate findings of facts or articulate the legal standard by which it abrogated the $4,500 retainer fee agreement for the handling of the Brojal appeal. In addition, there is a lack of any findings by the trial court to support its discounting or disregarding almost $10,000 in expenses and charges itemized by Christian in his accounting,

198

which accounting clearly was considered by the trial court in rendering other aspects of its decision.

## A.

The only statement made by the trial court with respect to the $4,500 retainer fee agreement is that "Mr. Christian has likewise failed to substantiate the reasonableness of the $4,500 he is seeking as attorney's fees for the appeal." No findings were articulated in support of this conclusion. In addition, there is no indication on what authority the court relied in determining the reasonableness of the retainer agreement, i.e., whether it applied McKenzie, or whether it determined that McKenzie is the appropriate standard to apply in deciding the reasonableness of a retainer fee agreement.

## 1.

As mentioned above, Christian in a May 15, 1980, letter originally proposed a minimum fee of $2,500 for handling the appeal, which letter concluded by saying, "If I do not hear from you or Mr. Cepheus Rogers approving this fee or my decisions to proceed on your behalf, prior to June 1, 1980, I will assume that you have consented to the terms and conditions herein. There is no need for you to respond to this letter if you consent." Mrs. Joseph did not reply and Christian undertook the appeal, and in a November 5, 1980, letter advised Mrs. Joseph that oral argument was scheduled for December 11, 1980. No reference to his fee was made in that letter. On November 28, 1980, though, Christian reconsidered his fee proposal and wrote Mrs. Joseph that "[i]t would be totally uneconomical for me to leave my fee at the minimum, in view of the time expended to date; accordingly, I notify you that, at this time, the appeal fee is increased by Two Thousand Dollars ($2,000)." In this letter Christian emphasized that his May 15, 1980, letter spoke of $2,500 as being a "minimum fee for handling the appeal," and that "I have expended over thirty-five (35) hours in preparing motions, reading, researching and writing the brief."

On December 29, 1980, Christian forwarded Mrs. Joseph the appellate retainer at issue here. Apparently because he had not received a response, he again wrote on January 22, 1981, that "[t]here are important developments in this matter, and I am about to withdraw my further services, unless you respond forthwith to my last letter with the attached agreement. I am not asking you for any money or payment, I am merely asking you to execute a

memorandum evidencing the indebtedness." Having apparently had no response to that letter either, Christian again wrote Mrs. Joseph on January 31, 1981. He wrote that "I notified you by my letter dated January 27, 1981,[1] that I shall do nothing further in this matter until I receive from you a written memorandum evidencing your indebtedness to me." Without any explanation on the record, Mrs. Joseph on February 10, 1981, executed the $4,500 retainer agreement.

### 2.

■■■■ As a general rule a lawyer's compensation is governed by his express contract with his client and he and the client are bound by its terms. Like any other contract, a retainer agreement is presumed to be fair until the contrary appears. Petition of Rosenman Colin Freund Lewis & Cohen, 600 F. Supp. 527, 531 (S.D.N.Y. 1984). As a result, where there is uncontradicted evidence of an agreed upon price, a court should not award damages on the basis of quantum meruit. Perlmutter v. Johnson, 505 A.2d 13 (Conn. App. 1986), cert. den., 55 U.S.L.W. 3473 (U.S. Jan. 12, 1987) (No. 86-812). However,

> [f]ee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts. Especially is this true where . . . a contract beneficial to the attorney is executed long after the attorney-client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination. In some jurisdictions it has been held that such agreements are void. In other states contracts of such character are held to be affirmatively invalid on the ground of fraud, and the burden is on the attorney to show the fairness of the transaction in that the compensation provided for does not exceed a reasonable compensation for the services rendered or to be rendered. In re Howell, 215 N.Y. 466, 109 N.E. 572, 574. Many courts have gone so far as to say that they are attended by a presumption of invalidity and overreaching. They are

---

[1] This letter is not a part of the record, and we do not now know if, in fact, Christian wrote Mrs. Joseph on January 22 and 27 or whether the January 31, 1981, letter was incorrect with respect to the date of his previous letter.

always subject to the close scrutiny of the court whenever judicial enforcement is sought.

Spilker v. Hankin, 188 F.2d 35, 39 (D.C. Cir. 1951). See Annot., 13 A.L.R.3d 701 (1967). Consequently, while a court should be hesitant to intrude where there is an express contract, where, as here, an agreement is entered after the attorney-client relationship is well advanced and litigation has neared completion, a court will impose a higher standard of proof on an attorney.

Had the Territorial Court concluded, therefore, that the attempt by Christian to increase his minimum fee of $2,500 to $4,500 was unreasonable because it constituted overreaching, and then held him to his original proposed $2,500 fee, this court would be hard pressed to say that the trial court had erred. The trial court, however, voided the agreement in its entirety without any explanation other than the passing note that "Mr. Christian has likewise failed to substantiate the reasonableness of the $4,500 he is seeking as attorney's fees for the appeal." Findings of fact or some articulated basis beyond the mere conclusion of unreasonableness is necessary to sustain the total abrogation of the retainer agreement.[2]

### B.

After concluding that the contingency fee and retainer fee agreements were unreasonable, the trial court then attempted to determine on a quantum meruit basis what was an appropriate award of attorney's fees for the Brojal matter. In that regard the trial court stated:

> Mr. Christian failed to provide the court with records or testimony showing the time and costs expended on the Brojal matter. This puts this court in a somewhat difficult situation in determining Christian's fees based on quantum meruit. Mr. Christian's hourly fee in 1978 was $75 per hour. Based on the evidence presented, this court finds that Mr. Christian spent approximately 125 hours on the Brojal matter, including the defense of the appeal. Thus, Mr. Christian will be awarded $10,000 as and for attorney's fees.

---

[2] The need to reveal the trial court's rational is made all the more necessary because of Christian's accounting of time expended.

While concluding that Christian spent approximately 125 hours "based upon the evidence presented," at no time did the trial court articulate how it arrived at that figure. This lack of specificity is particularly troublesome because the trial court combined the work performed pursuant to the contingency fee agreement with the work performed by Christian in connection with the appellate work he performed.

■■ As an appellate court, in reviewing an award of attorney's fees to a prevailing party we are advised not to arbitrarily reject claimed hours when we have no personal knowledge of the work performed by an attorney. While a trial court has discretion in attorney's fee cases to fix a fee, the judge must state as specifically as possible the facts that support the ultimate fee award. Ursic v. Bethlehem Mines, 719 F.2d 670 (3d Cir. 1983); Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy). Moreover, the trial court cannot make an adjustment in the so called lodestar figure without articulating the factual or evidentiary basis for such an adjustment. See Prandini v. National Tea Co., 585 F.2d 47, 52 (3d Cir. 1978); Lindy, 487 F.2d at 169.[3] Where there is no evidence to support an adjustment in the lodestar an appellate court "may disturb the [trial] court's findings because sufficiency of the evidence is a matter of law subject to plenary review." Ursic v. Bethlehem Mines, 719 F.2d at 674–75. That rationale equally is applicable here since the trial court failed to articulate any reason or any basis for its conclusion that 125 hours of work was performed.

---

[3] While the trial court has broad discretion in making an award of attorney fees to a prevailing party, even that discretion has limits. For example, in Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985), cert. granted and vac. on other grounds, 478 U.S. 1015, 106 S.Ct. 3324 (1986), it was stated:

We recognize that in some respects fee applications involve matters of which the trial court has personal knowledge. That is true here, however, only with respect to the time spent in pretrial conferences and in trial. Of the fifteen categories of activity for which lodestar time was disallowed, only three are activities as to which the court arguably had personal knowledge. . . . As to the remaining lodestar time disallowed, there is simply no record basis for the disallowance. The activity categories in question all involved activities outside the presence of the court. . . . The trial court states that "[t]aking into consideration the experience of counsel, as discussed below, nonetheless the 318.5 hours spent were excessive and duplicative." . . . There are no subsidiary findings in support of this conclusory statement, and there is no evidence in the record which would support such findings had they been made.

■ The trial court appears either to have disregarded or completely discounted the time Christian claims he devoted to handling the Brojal appeal. Although the trial court considered the Brojal record at the trial level, it did not have before it anything regarding the Brojal appeal.[4] It cannot be doubted that the parties' initial contingency fee agreement only related to the trial of the Brojal matter because its terms did not encompass the handling of any appeal. More importantly, the conduct of the parties supports such a conclusion because Mrs. Joseph not only signed the contingency fee agreement but also the subsequent retainer fee. If it was the trial court's opinion that the subsequent appeal retainer agreement was unenforceable, as it appears to have concluded, then it was required to say why. No specific reason was given by the trial court as to why it simply ignored the work of Christian with respect to the appeal. Thus, there is nothing that would support a total abrogation of the $4,500 retainer agreement. This is especially so since no where in the record is there any indication that the trial court ever was presented or reviewed the brief of the appellee, the appellee's motion to dismiss the appeal or any of the other appeal efforts claimed by Christian. App. 420-A.[5] Having concluded that the trial court failed to articulate either the legal standard or a factual basis for setting aside the $4,500 attorney fee agreement for the appeal of the Brojal case, that portion of the trial court's decision must be remanded for further consideration.

## IV.

Finally, we are troubled by the manner in which the trial court totally rejected $8,755.38 in claimed and accounted legal work by Christian without a work of explanation. While the trial court stated with specificity and particularity the basis for arriving at

---

[4] Although it does not appear to have been admitted into evidence during the trial, the record before us, which has not been contested, includes a breakdown of 75 hours of work by Christian solely in prosecuting the appeal. App. 420-A.

[5] The burden of proof was on Christian to establish his entitlement to the claimed fees under his retainer agreement. However, since the court abrogated that agreement and proceeded on a quantum meruit basis, it could have taken judicial notice of the records in this court and the Third Circuit Court of Appeals, Fed. R. Evid., 201(b), (c), and (f), and then have articulated some reason for its apparent rejection of all the time devoted to that appeal.

its $31,751.77 figure,[6] the court did not articulate why it rejected (1) the claimed November 13, 1979, attorney's bill in the amount of $1,051.90, (2) the April 11, 1980, charge for the preparation of five deeds at the rate of $375 each for a total of $1,875, (3) the attorney's bill dated December 23, 1980, totalling $890, and (4) the August 10, 1981, entry labeled "Attorney's fee paid (February 10) stipulation" [sic] in the amount of $4,938.48. While the trial court may have had some basis for rejecting those claimed fees, again it made no statement with respect to them. Once again, therefore, we are without any basis for determining that the trial court applied an appropriate standard with respect to those charges.

## CONCLUSION

In summary, the trial court correctly applied the teachings of McKenzie Construction Co. v. Maynard, supra in setting aside the contingency fee agreement. We, however, are left with the firm conviction that the trial court failed either to articulate an appropriate legal standard or make the necessary findings of fact for (1) setting aside the Brojal appeal retainer fee agreement between Christian and Mrs. Joseph by which Christian was to be paid $4,500; (2) arriving at the $10,000 to be awarded to Christian as and for his attorney fees for not only the Brojal trial work but the Brojal appeal and (3) rejecting $8,755.38 in expenses and costs

---

[6] In arriving at this figure the trial court, slip opin. at 14–15, credited the following fees to Mr. Christian:

| | |
|---|---:|
| a. Royal Bank of Canada v. Brojal—representation of Mr. Joseph, including court appearances | $1,500.00 |
| b. Three eviction cases | 750.00 |
| c. Negotiation of sale; preparation of sale contracts; negotiations with Roe-win, conference with tenants and prospective buyers Calquohoun properties | 6,200.00 |
| d. Negotiating, collecting and preparing contracts—Whim prepare deed sale | 977.50 |
| e. Brokers fees—Whim | 2,200.00 |
| f. Miscellaneous chores including writing of letters— | 1,500.00 |
| g. Sums of money paid on behalf of Mrs. Joseph for costs of litigation in the Brojal matter | 165.44 |
| h. Expenses and costs deriving out of the management and sale of the Whim and Calquohoun properties | 5,028.51 |
| i. Money given to Mrs. Joseph over a period of approximately three years | 5,655.00 |
| j. Sums paid to Royal Bank of Canada on behalf of Mrs. Joseph | 7,595.32 |
| Total | $31,571.77* |

*The trial court opinion incorrectly totals these figures to be $31,751.77

204

claimed by Christian as being incurred on behalf of Mrs. Joseph for matters apparently unrelated to the Brojal trial or appeal. Accordingly, this case will be reversed and remanded for the entry of further findings of fact and conclusions of law and/or, if necessary, the taking of additional evidence consistent with this opinion.

## JUDGMENT ORDER

After considering the contentions raised by the appellant and having filed an opinion this date, it is

ADJUDGED AND DECREED that the judgment of the Territorial Court is reversed and remanded for the entry of further findings of fact and conclusions of law and/or, if necessary the taking of additional evidence consistent with the opinion issued this date.