**McKENZIE CONSTRUCTION, INC., Appellant,**

v.

**Desmond L. MAYNARD.**

**No. 86–3259.**

United States Court of Appeals, Third Circuit.

Argued April 30, 1987.

Decided July 7, 1987.

Wallace L. Walker (Argued), Eileen P. Epley, Philadelphia, Pa., for appellant.

Albert A. Sheen (Argued), Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

Before SEITZ, HIGGINBOTHAM, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The primary issue presented by this appeal is whether a one-third contingent fee agreement between the plaintiff and his attorney, which the plaintiff readily concedes was reasonable when entered into, nevertheless became unreasonable at some point thereafter. We conclude that the district court did not abuse its discretion in finding that on this record nothing occurred after the fee agreement that rendered it unreasonable, and we therefore affirm the judgment of the district court.

### I.

The facts in this case have been extensively detailed in our prior opinion in *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97 (3d Cir.1985) [*McKenzie I*], and for the most part we need not repeat them here. For our purposes, it is sufficient at this point merely to note that the plaintiff, McKenzie Construction, Inc. (McKenzie), through its president James H. King, is appealing from a district court's judgment on remand from *McKenzie I,* which refuses to set aside as unreasonable a contingent attorney fee agreement with the defendant, attorney Desmond L. Maynard. The agreement provided that plaintiff retained de-

fendant "to prosecute on its behalf ... an action for debt and/or breach of contract" arising out of plaintiff's construction contract with the Government of the Virgin Islands, and that plaintiff would pay a contingent fee of one-third of any recovery from judgment or settlement. Thus, after reaching a settlement on McKenzie's behalf of $195,887.46, together with $5,000 towards its attorney's fees, Maynard received $65,295, which converts to approximately $790 per hour. If Maynard had charged his regular hourly rate of $60, he would have been paid between $4,000 and $5,000.

After a bench trial in *McKenzie I*, the district court concluded in a memorandum opinion dated September 14, 1983, that although it was uncomfortable with the $65,-295 fee due under the contingent fee agreement, the plaintiff had failed to demonstrate that the fee was "clearly excessive" viewed at the time Maynard accepted employment. This analysis was based in part upon Model Code of Professional Responsibility DR 2–106(A) and (B). We vacated and remanded, concluding that the showing required in a civil action to reduce a fee is not necessarily the same as the showing required to prove an ethical violation. We therefore directed the district court to consider the following:

(1) An attorney bears the burden of proof to demonstrate that his or her fee is reasonable, whether the action is initiated by the attorney or client.

(2) The applicable standard in an attorney fee dispute is the reasonableness of the fee, applying principles of equity and fairness.

(3) Consideration should be given to circumstances existing at the time the arrangement is entered into, and thereafter, to the quality of the work performed, the results obtained, and whether the attorney's efforts substantially contributed to the result.

(4) Although reasonableness at the time of contracting is relevant, consideration should also be given to whether events occurred after the fee arrangement was made which rendered a contract fair at the time unfair in its enforcement.

*See McKenzie I*, 758 F.2d at 99–101.

We also noted that:

courts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties. Further, a prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice. It should therefore be the unusual circumstance that a court refuses to enforce a contractual contingent attorney's fee arrangement because of events arising after the contract's negotiation. Nevertheless, the district court must be alert to fees where "the lawyer's retention of it would be unjustified and would expose him to the reproach of oppression and overreaching."

*Id.* at 101–02 (citations omitted).

On remand, the district court considered the *McKenzie I* guidelines in a memorandum opinion dated March 12, 1986, and again concluded that Maynard was entitled to his $65,295 fee. McKenzie now appeals, asserting, *inter alia*, that although the contingent fee arrangement was reasonable at the time it was entered into,[1] it should nevertheless be set aside based on events occurring after the arrangement was entered into, the result obtained, the quality of the work performed, and Maynard's meager contribution to the result. McKenzie also asserts that a contingent fee (as opposed to a fixed fee) was inappropriate, and that the district court erred in refusing to allow McKenzie to present a particular witness's testimony.

---

**1.** Under ordinary circumstances, our inquiry would begin by scrutinizing the reasonableness of the contingent fee arrangement. Here, however, McKenzie's counsel repeatedly admitted during oral argument before this court that McKenzie believed the arrangement to have been reasonable when entered into. Counsel also made this concession before the district court at the close of the hearing after remand. We therefore express no opinion on the standards for reasonableness of a contingent fee arrangement, and proceed on the *assumption* that the fee was reasonable *ab initio*.

## II.

We begin by considering, seriatim, whether Maynard's fee should have been set aside based on events occurring after the arrangement was entered into, the result obtained, the quality of the work performed, or Maynard's lack of contribution to the result.

### A.

■ McKenzie asserts that although fair in the first instance, its contingent fee arrangement with Maynard became unfair in its enforcement as a result of an increase in the total amount of debt McKenzie claimed it owed to its creditors, from $129,-402.27 at the time of the fee arrangement to $161,516.57 at the time of the settlement. According to McKenzie, Maynard's $65,295 fee left an insufficient amount of money remaining from the gross $195,-887.46 settlement for McKenzie to pay its alleged $161,516.57 debt, let alone to make a profit. McKenzie does nothing, however, to dispel the district court's reasonable finding of fact that the alleged increase in debt, if any, was "significantly exaggerated." The court stated:

> [McKenzie's president, King,] admitted that of the estimated forty-four creditors he claimed were owed money from the hospital job, very few of them filed any law suit seeking debt recovery. This fact, combined with our dim view of Mr. King's credibility, leads us to believe that the list of creditors and the amount of the claims was significantly exaggerated. It also appears that many of the subcontractors McKenzie claimed as creditors were probably paid by the government or McKenzie's successor on the job.

> \*   \*   \*   \*   \*   \*

We believe that King kept puffing up the claims of creditors to obtain a larger settlement from the government. He then used the same figures to argue against Maynard's fee of one third of the recovery, claiming it would negate the ability of McKenzie to pay off all creditors' claims. Other than the list of creditors and amounts allegedly owed which

was prepared by King, McKenzie submitted virtually no corroboration in support of most creditor's claims.

We do not accept the McKenzie claim that Maynard's fee negated the ability to pay creditors, and we do not find that there were any changed circumstances after the fee arrangement was agreed upon which would cause us to alter the reasonable contingent fee.

Mem.Op. at 9–10. Therefore, because McKenzie has given us no reason to question this reasonable finding of fact, we conclude that the district court did not err in finding that no event occurred after the fee arrangement was entered into which rendered a contract admittedly fair when entered into unfair in its enforcement.

### B.

■ McKenzie asserts that Maynard's fee should be set aside as unreasonable based on the result obtained, because it hired Maynard to achieve reinstatement of the terminated contract, or in the alternative to recover lost profits, and in the end Maynard obtained very little beyond what the government had offered from the beginning. This assertion, however, ignores the government's offer to allow McKenzie to complete the job; *King rejected the offer of reinstatement on the original terms*, and required a large increase in the contract price as a condition of resuming work. Therefore, it can hardly be said that Maynard failed to achieve reinstatement of the terminated contract.

Moreover, contrary to McKenzie's assertion that ultimately Maynard accomplished very little, Maynard obtained 65% of the contract price plus $5,000 in attorney's fees. The government had previously paid for only 34% of the work, and although the government conceded that McKenzie had completed 45–50% of the work, the government showed no intention of paying more than 34% and had even hinted it might sue McKenzie. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the

interests of justice."[2] *McKenzie I,* 758 F.2d at 101–02.

### C.

■ McKenzie next asserts that Maynard's fee should be set aside as unfair and inequitable based on the unexceptional quality of the work Maynard performed. According to McKenzie, Maynard merely carried out "mundane legal chores" involving nothing more than "debt collection" in a case the government was "desperate to settle." As the course of the fourteen month long negotiations indicate, however, the government was far from desperate to settle. Indeed, as the district court specifically found:

> Despite counsel's insistence that this was a mere collection case, the evidence indicates that the possibility of collecting any money for McKenzie would' require overcoming the government's strong resistance. Not to be overlooked is the further fact that McKenzie's president had antagonized the architect and various government officials in his approach to their complaints.

Mem.Op. at 7–8. Further, it must also be remembered that Maynard also attempted—at one point successfully—to get the government to offer to reinstate McKenzie. This after the government had already defeated an action for injunctive and declaratory relief brought by another attorney on McKenzie's behalf. Therefore, we see no reason to conclude that Maynard's work lacked in quality.

### D.

■ McKenzie asserts finally that Maynard's fee should be set aside as unreasonable based on Maynard's relatively small contribution to the result. As the district court noted, however, Maynard's contribution was far from insubstantial:

> [A]fter a year of prodding and wheedling, he obtained a settlement satisfactory to McKenzie.
>
> \*　\*　\*　\*　\*　\*
>
> He substantially contributed to that result for one very important reason: he knew that he would have to patiently negotiate with the government without going to court, and without appearing to be anxious to settle.... In this regard, Maynard pushed the government to the logical settlement limits.

Mem.Op. at 5, 8.

Nevertheless, in a manner similar to its assertion with respect to "quality of work," McKenzie suggests that "[t]his is an appalling mischaracterization of Maynard's representation of McKenzie." McKenzie cites little in support of its own characterization of the work, however, other than its belief that the government was "frantic" to settle. As already discussed, the district court reasonably rejected this characterization of the facts: the government had already won once in court, and negotiated a settlement over fourteen months. Such behavior hardly characterizes a party "frantic" to settle. Therefore, we decline to upset the district court's finding that Maynard substantially contributed to the result obtained.[3]

### III.

■ Despite McKenzie's concession that the parties' agreement was reasonable when entered into, McKenzie does assert that a contingent fee, as opposed to a fixed

---

**2.** We therefore reject McKenzie's assertion that Maynard should have gone through with the litigation. Indeed, as the district court noted, because the Virgin Islands is judgment-proof, any judgment would have been worthless. *See* mem. op. at 8. We similarly reject as frivolous any suggestion that the retainer agreement required litigation. The retainer agreement provided for a one-third fee out of any amount recovered, "either by judgment or settlement."

**3.** Although not argued separately, McKenzie also suggests that one of the reasons that Maynard's fee "cannot be tolerated" is that it is "thirteen times the lodestar." Lodestar analysis, however, does not apply to a contractual contingent fee agreement. *See Dunn v. H.K. Porter Co.,* 602 F.2d 1105, 1111–12 (3d Cir.1979). We therefore reject any lodestar analysis as inapplicable.

fee, was inappropriate.[4] McKenzie's arguments on this issue are without merit.

First, McKenzie did not contest the appropriateness of a contingent fee in *McKenzie I. See McKenzie I*, 753 F.2d at 100 ("the plaintiff does not contest that a contingent fee agreement is permissible in the Virgin Islands, at least in the present context."). Indeed, the question was arguably conceded during oral argument before this panel. Second, McKenzie's argument that there was no risk of non-recovery because "there was enough money in the case," ignores the potential that none of that money might have been recovered. The government might have continued to refuse any settlement, and, especially given King's poor credibility, McKenzie might have (again) lost the case in court. Furthermore, even if McKenzie secured a judgment after trial, there was no assurance it could be collected. Third, contrary to McKenzie's assertion that there was no evidence that it could not have paid a reasonable fixed fee, Maynard so testified and the district court twice so found. We also so noted in *McKenzie I. See id.* at 99. Therefore, as the issue has been previously conceded, there was risk of non-recovery, and the evidence supports a conclusion that there was no other possible means of payment, we hold that a contingent fee was not inappropriate per se.[5]

### IV.

■ Prior to the hearing on remand, McKenzie's counsel took George F.S. Harris's video deposition for use at trial. Harris apparently testified that certain meetings in Washington, D.C., which Maynard claimed on his time sheets, never took place. This put in question both 24 of Maynard's claimed 83 hours and Maynard's credibility in general. However, the deposition was taken after the time the district court had set for discovery, and without the presence of Maynard's counsel. Accordingly, the district court refused to allow the videotaped deposition to be received into evidence, a decision which McKenzie does not contest.

Rather, McKenzie asserts that "the real issue is whether the trial court abused its discretion in refusing to grant a continuance...." In support of its argument that the court did abuse its discretion, McKenzie points to both the importance of the testimony, and McKenzie's alleged failure to receive notice of the motion or order prohibiting use of the deposition testimony prior to the January 13 hearing. This argument, however, ignores the district court's finding that McKenzie failed to offer any valid reason for ignoring the order setting the time for discovery, and suggestion that the excuses offered were untrue. On appeal, McKenzie still provides no explanation for failing to earlier depose Harris.

As the district court noted, "[e]quity and fairness is a two-way street.... Equity and fairness dictate that both sides comply with the order of the court." Had McKenzie timely deposed Harris, no continuance would have been required. Further, McKenzie's apparent lack of effort to obtain Mr. Harris's "crucial" testimony either in connection with the original trial or in the discovery period ordered prior to the supplemental hearing suggests to us that Harris's testimony may not have been quite as "crucial" as McKenzie claims. Accordingly, we perceive no abuse of discretion in the district court's refusal to grant a continuance.

### V.

In summary, we conclude that no condition arose after the fee arrangement in this

---

**4.** Again, we do not reach the issue of whether the particular contingent fee arrangement involved in this case was reasonable, as we deem the reasonableness, *ab initio*, of the particular contingent fee in this case to have been conceded.

**5.** We reject as frivolous McKenzie's argument that the arrangement was ambiguous because the contingent fee might have been intended only to insure payment of the $5,000 retainer originally demanded. The agreement clearly states that "client agrees to pay attorney the sum equivalent of thirty-three and one-third percent (33⅓%) of any amount recovered against the defendant."

case was entered into which caused it to *become* unreasonable. Further, we also conclude that a contingent fee—as opposed to a fixed fee—was not inappropriate, and that the district court did not abuse its discretion in failing to grant a continuance so that the plaintiff could present George F.S. Harris's testimony.

Accordingly, the judgment of the district court will be affirmed.[6] Each side will bear its own costs.

---

6. In view of our disposition of this appeal, we do not reach McKenzie's claimed entitlement to prejudgment interest.

