**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1760 & 19-1771
_____

IN RE: NATIONAL FOOTBALL LEAGUE PLAYERS'
CONCUSSION INJURY LITIGATION

Paul Raymond Turner, personal representative of the
Estate of Kevin Turner,
Appellant in No. 19-1760

Podhurst Orseck, P.A.,
Appellant in No. 19-1771
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:12-md-02323)
District Judge: Honorable Anita B. Brody
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 22, 2020

Before: McKEE, BIBAS, and NYGAARD, *Circuit Judges*

(Filed: September 9, 2020)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Plaintiffs agree with their lawyers on contingent fees, but district courts still review their deals for reasonableness. Courts usually enforce the parties' bargain, though they rarely tweak the terms as circumstances change. When district courts do review and act, we respect their careful judgment.

Here, the District Court took the major step of slashing a contingent fee. Yet the plaintiff asks us to cut it even more. But the court's analysis was clear, convincing, and cogent. And it reasonably applied the factors required by our precedent. So we will affirm.

## I.  BACKGROUND

### A.  Facts

Kevin Turner was a professional football player for the New England Patriots and the Philadelphia Eagles. About a decade after he retired, he was diagnosed with Amyotrophic Lateral Sclerosis, also called ALS or Lou Gehrig's disease. Attributing the disease to the many concussions that peppered his pro football career, in 2012 he sued the NFL for damages. Podhurst Orseck represented him.

Rather than pay by the billable hour, Turner chose a contingent fee. That meant Podhurst would be entitled to 40 percent of any recovery (or 45 percent if it went up on appeal), but the firm would cover all costs upfront. It also meant that the financial risk of the case rested on Podhurst's shoulders. If Turner lost before trial, at trial, or on appeal, Podhurst would walk away with nothing.

As we have recounted at length, all concussion-related lawsuits against the NFL were eventually consolidated in the Eastern District of Pennsylvania. *See generally In re Nat'l*

2

*Football League Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016). The cases settled for nearly $1 billion. *Id.* at 447. Turner's own award was $5 million, the maximum recoverable by any class member. *Id.* at 424. But his victory was marred by tragedy, as he died mere weeks before the court finally approved the settlement.

This dispute predated the settlement. Podhurst had played an active role in the multi-district litigation, representing both individual clients like Turner and the class of players. As settlement drew closer, it became clear that the NFL would pay for Podhurst's work for the class.

Turner thought it only fair that this class fee, totaling around $6 million, cover his personal representation as well. Otherwise, he claimed, his counsel would get paid twice for their work for him: once by the NFL and once out of his recovery. The firm disagreed. Though it made clear that it would not seek the full 45 percent allowed by contract, Podhurst did intend to enforce the agreement to an extent.

The dispute simmered. Turner enlisted new counsel, Polsinelli, to help. But negotiations stalled. After Turner passed away, his Estate fired Podhurst as counsel, ending their four-year relationship.

## B. Procedural history

Before the split, Podhurst asked the Estate to re-sign the contract that Turner had agreed to. The Estate refused. Podhurst lowered the fee it sought to 25 percent. Again, the Estate declined. The simmer heated up to a boil.

But the District Court was ready. Anticipating the storm of fee disputes at the end of the litigation, it prepared a list of ground rules. Because class counsel did part of the work

3

for all the plaintiffs, enforcing the full contingent fee would overcompensate many lawyers. The court compared the work done for the class by class counsel (which the NFL had agreed to pay for), with the work done by individual plaintiffs' lawyers (to be paid by contingent fees). It capped those contingent fees at 22 percent, finding that amount would adequately compensate those lawyers for their share of the work and risk. It also adopted rules for lawyers seeking variances, tapping a magistrate judge to handle those disputes.

So this dispute went to a magistrate judge. After hearing oral argument, he recommended slashing Podhurst's fee by almost a third, down to 15.5 percent. The District Court adopted his recommendation. The Estate now appeals. We review for abuse of discretion. *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 100 (3d Cir. 1985) (*McKenzie I*); *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43, 44 (3d Cir. 1987) (*McKenzie II*).

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY NOT REDUCING PODHURST'S AWARD FURTHER

Even after shrinking Podhurst's fee by almost a third, the Estate seeks further cuts. But as we explain, the District Court did not abuse its discretion by adopting the magistrate judge's reasonable recommendation.

We assess challenges to contingent-fee arrangements using factors from a pair of cases, *McKenzie I* and *McKenzie II*. Neither party disputes this. The dispute instead hinges on *how* the magistrate judge applied the *McKenzie* factors. There are five, looking to:

- the agreement at the time of contracting;

- the circumstances by the time the court enforces the agreement;

- the results obtained;

4

- the quality of the work performed; and

- how much that work contributed to the result.

*McKenzie I*, 758 F.2d at 101; *McKenzie II*, 823 F.2d at 45.

At root, the Estate claims that the 15.5 percent fee is unsupported by the magistrate judge's analysis. That argument fails.

The magistrate judge started with an uncontested premise: given the work that class counsel did here, a 22 percent fee ordinarily suffices to compensate individually retained attorneys. From that starting point, he turned to *McKenzie*, spending fifteen pages laying out the relevant factors. He then devoted nearly twenty-nine *more* pages applying those factors to Podhurst and Turner. He did all that while keeping in mind the deference underlying *McKenzie I* and *II*: "[C]ourts should be reluctant to disturb contingent fee arrangements freely entered into by knowledgeable and competent parties." *McKenzie I*, 758 F.2d at 101; *McKenzie II*, 823 F.2d at 45.

### A. The District Court reasonably assessed the agreement at the time of contracting

The magistrate judge found the contract reasonable at its birth. He rested on two factors: the potential length of the litigation and the hurdles it faced. Both were substantial. By that time, consolidation into multi-district litigation was "almost certain" and would streamline the work. App. 36. Even so, there was plenty of work left to do. There was also still plenty of risk, especially on issues like causation, preemption, and the statute of limitations. Recovery was not guaranteed.

5

The magistrate judge weighed these factors and others, including the vast work Podhurst did upfront and the clarity and early onset of Turner's diagnosis. He found the contract reasonable when Turner signed it, and the District Court reasonably adopted this assessment.

## B. The District Court reasonably assessed the effect of changed circumstances

The magistrate judge then turned to how circumstances changed and what light that cast on the fee. Much had changed. Over the years, it grew clearer that Podhurst could seek payment from the settlement fund for its upfront work. And as Podhurst's stable of clients increased, it benefitted from economies of scale. These changes favored reducing the fee.

Then again, the court had already imposed the fee cap to account for some of these changes. But as the magistrate judge explained, this cap did not fully account for Turner's unique situation as representative of the subclass. Class counsel thus did some of the work for him that ordinarily would have been done by his individual lawyers. Finally, because the Estate ended the representation, Podhurst never had to handle the claim-submission process. So further cuts were warranted. The District Court reasonably adopted this analysis too.

## C. The District Court reasonably assessed the results that Podhurst secured for Turner

The magistrate judge handled this factor quickly and reasonably. Turner recovered $5 million from the NFL—the highest amount payable to any former player. That favored Podhurst.

6

**D. The District Court reasonably assessed the quality of the work that Podhurst did for Turner**

Tackling the fourth *McKenzie* factor, the magistrate judge found that "Podhurst provided quality work for Turner, performing many necessary tasks in this litigation." App. 44. And this work was substantial. The magistrate judge detailed eight categories of work that Podhurst did, noting where it did and did not favor reducing the fee below the fee cap. Though Podhurst's work was good, some of it was done in part for the class, and some was done by replacement counsel Polsinelli. The District Court reasonably adopted the magistrate judge's assessment of these points.

**E. The District Court reasonably assessed how much Podhurst's work for Turner contributed to his result**

Finally, the magistrate judge gauged how much Podhurst's work contributed to Turner's favorable recovery. He distinguished the work Polsinelli did from the work Podhurst had done as class counsel and had already been paid for out of the settlement fund. That analysis was reasonable. We will not fault the District Court for adopting it.

Relatedly, the Estate objects that the fee awarded dwarfs the number of hours that Podhurst worked for Turner. This argument assumes that lodestar analysis (the number of hours worked times a reasonable hourly rate) bears on contingent-fee agreements. "Lodestar analysis, however, does not apply to a contractual contingent fee agreement. We therefore reject any lodestar analysis as inapplicable." *McKenzie II*, 823 F.2d at 47 n.3 (citation omitted). The District Court did not abuse its discretion by heeding our words.s

7

### III. THE DISTRICT COURT DID NOT VIOLATE THE RULES GOVERNING FEE DISPUTES OR ABUSE ITS DISCRETION

The Estate argues that the magistrate judge did not follow the District Court's guidelines for attorney's fees. As a result, it argues, the fee awarded improperly paid Podhurst for tasks that were:

- not included in its fee request;

- not supported by evidence; and

- not done for Turner's benefit alone.

Not so. To start, fee guidelines do not trump our precedents. The fee analysis need only be reasonable under the *McKenzie* factors. We require nothing more.

In any event, the Estate's argument fails. First, everything was included in Podhurst's fee request. It asked for the full 22 percent and pursued it vigorously. Second, there was plenty of evidence to support Podhurst's claim. As we have explained, the magistrate judge spent many pages exploring all the factors and Podhurst's work. Its recommended reduction of Podhurst's fee reflects that. Finally, the magistrate judge carefully separated the work Podhurst had done for Turner as its individual client from the work it had done for the whole class. That motivated the large fee cut. Even apart from our deferential standard of review, the District Court acted quite reasonably in adopting this analysis.

\* \* \* \* \*

Kevin Turner sued the NFL and won. The thousands of NFL veterans who have or will recover under this concussions settlement can thank his courage and dedication. But a contract is a contract. No matter who the party, we cannot ignore its terms.

8

We rarely reduce agreed-upon contingent fees. Yet the District Court did just that, cutting the fee from 22 to 15.5 percent. The magistrate judge scrutinized the contract's terms and applied the *McKenzie* factors to make sure the terms remained reasonable, and the court reasonably agreed. It did not have to cut the fee any further. Because that analysis was thorough and reasonable, we will affirm.