## VIRGIN ISLANDS BAR ASSOCIATION ETHICS AND GRIEVANCE COMMITTEE, Petitioner

v.

## ALLAN A. CHRISTIAN, Esq., Respondent

Civil No. 1987-413

District Court of the Virgin Islands

Div. of St. Thomas and St. John

January 30, 1989

RHYS S. HODGE, ESQ., St. Thomas, V.I., *for petitioner*

FRANK PADILLA, ESQ., St. Croix, V.I., *for respondent*

O'BRIEN, *Chief Judge*

## MEMORANDUM OPINION AND ORDER

This case involves the distasteful task of evaluating the performance of an attorney practicing in the territory. It began as an allegation that Allan A. Christian, Esq. (Christian) promised to pay a forwarding fee for a case to his brother Melvin Christian. During the hearing which took place on September 7, 1988, wider implications became evident. The issue whether Christian also overcharged his client also entered the picture. We ended the proceedings by granting each side additional time to respond to that issue, and now find that Christian did indeed promise a payment to his brother in breach of the Code of Professional Responsibility. We also find that Christian did overcharge his client and must return a portion of the fee.

## I. FACTS

During 1981 Emile Pedro was a co-worker with Melvin Christian in the Virgin Islands Fire Service. Pedro was injured in an accident which carried potential liability against a negligent tortfeasor. Melvin Christian talked to his brother two days later and agreed, as he termed it "to pave the way" for his brother to obtain representation of Pedro. He testified that he told his brother that he wanted ten percent of whatever fee he obtained. He further testified that his brother agreed, but warned that the arrangement must be kept "hush hush between us."

Pedro described how Christian came to the hospital and presented him with a retainer agreement providing for a one-third contingent fee of all sums recovered on his behalf from the alleged tortfeasor. He stated that Christian told him that his brother had sent him. Pedro also testified that after about a year Christian demanded that he sign a new retainer agreement which provided for a forty percent contingent fee. He asserted that Christian claimed that the case was consuming much more time than

anticipated. Pedro said he didn't agree with that, but signed the new retainer agreement notwithstanding.

Melvin Christian claimed that he received only $1,000 from his brother as his share of the case and kept pressing him for more money which he thought he was owed.

Christian himself conceded that Melvin asked him to visit Pedro, but he could not recall any meeting with him concerning a forwarding fee. He said they never discussed any such thing, and he testified that payments to Melvin by him were for other purposes. He did admit that he was "grateful" to his brother for providing the entre to Pedro.

The case was eventually settled with a gross payment of $120,000. Out of that amount, Christian paid himself $48,000 as forty percent of the total, and deducted a further $5,000 for work he claimed to have performed in an ancillary declaratory judgment action to assure that insurance coverage would finance a settlement.

The evidence became somewhat confusing at this point because Pedro was also residing in an apartment owned by Christian and Christian believed that he was owed money for past due rent. In his accounting to Pedro in writing upon receipt of the $120,000, Christian took $53,000 as a total fee and $2,825.90 as additional expenses. Some of those expenses are suspect however, because they involved the taking of depositions of certain witnesses without any notice or appearance by any adversary. Clearly, they would be useless in any litigation and the client should not be charged for them. However, Christian never broke them out of the total transcripts charged.

Christian never clearly explained how he could arbitrarily decide that he wasn't being paid enough, and thereby increase his fee by requiring the client to sign a new retainer agreement. He also did not explain how he could charge more for a declaratory judgment action integrally related to the primary action on top of the forty percent, except to state that he considered it a separate matter for fee purposes.

Melvin Christian, angered by his brother's refusal to pay him the sums due, as he saw it, decided to take action, and the action he took was a complaint to the Virgin Islands Bar Association Committee on Ethics and Grievances. He had no idea when he brought his complaint that such a forwarding fee which formed the basis for his complaint was prohibited by the canons of ethics. We discuss those canons in the context of the facts as stated above.

## II. DISCUSSION

Three separate sections of the Code of Professional Responsibility are implicated in this case. Two of them deal with the payments to lay persons for arranging representation of a client. They are DR 2-103(B) which reads:

> (B) A lawyer shall not compensate or give anything of value to a person ... to recommend or secure his employment by a client, or as a reward for having made a recommendation resulting in his employment by a client ....

The second provision relating to fee forwarding is DR 3-102(A), which states in pertinent part:

> (A) A lawyer or law firm shall not share legal fees with a non-lawyer ....

These could not be clearer. If Christian paid his brother for arranging the representation of Pedro, he has violated the Code of Professional Responsibility. Although Christian denies that this was the case, we regret to say that his credibility on the subject is weak. His brother's testimony is far more believable. Christian states that he paid his brother money to help him build a fence around property. The circumstances, however, as they developed at trial, demonstrated that this was not the case. All of Christian's behavior leads to the inescapable conclusion that he paid his brother pursuant to the fee forwarding arrangement.

■ We find that by doing so, he violated the above two disciplinary rules of the Code.

We turn next to the question of whether Christian charged Pedro an excessive fee. The Disciplinary Rule involved is DR2-106(A) which simply states that "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." Christian charged Pedro 40 percent of the $120,000 settlement, and an additional $5,000 for handling a declaratory judgment action. The Court is familiar with both cases. Christian himself claims that he spent 115 hours on the declaratory judgment action. This is preposterous. The insurance company barely fought the action and Christian made an application for an award of attorney's fees and costs to indemnify Pedro and an order was entered granting $4,100. Christian had claimed $22,000.

What is disturbing about this matter is not only the question of excessiveness. Apparently when the $4,100 was paid by the

insurance carrier as indemnification for Pedro's fees, Christian kept that money. The $5,000 he charged Pedro is above and beyond the $4,100 he already received and never turned over to his client, the person actually indemnified.

Thus, in actuality Christian received the $48,000 (forty percent), the $5,000, and an additional $4,100. This is not only excessive, it is outrageous, and it explains why the profession of the law is held in such low esteem in the territory at this time.

We cannot countenance such overcharging. This case, in its totality, warranted, perhaps, the one third contingent arrangement common in such situations. That would provide a fee of $40,000. Our review of the file in the primary negligence action indicates that this is more than adequate compensation for the time involved in obtaining a satisfactory settlement. Anything above that is clearly excessive, and we will direct Christian to forthwith return the excess, as we calculate below, to Pedro.

■ Christian will pay Pedro the $4,100 he collected on the court-ordered fee in the declaratory judgment action, as well as the additional $5,000 he charged. In addition, as stated earlier, he took depositions which had no value, since no notice was given to opposing parties. Despite being invited to tell us what this amount actually was, such a figure was not provided. We will, therefore, calculate the amount at $500.

## III. CONCLUSION

■ Because he violated the Code of Professional Responsibility by entering a fee-sharing arrangement with a non-lawyer, Christian is hereby given a public reprimand, and will be subject to harsher action if such behavior is repeated. He will further be ordered to pay Emile Pedro the sum of $8,000, being the difference between a forty percent fee and a one-third fee. In addition, he will pay Pedro $9,100 (the $4,100 and $5,000 claimed for the declaratory judgment action) and $500 for useless depositions. This total amount is $17,600, to be paid within 30 days.

IT IS SO ORDERED.