**ALLAN A. CHRISTIAN, plaintiff**
**v.**
**RITA M. GORDON, defendant**

Civil No. 274/2000

Territorial Court of the Virgin Islands

Division of St. Croix

June 20, 2001

ALLAN A. CHRISTIAN, ESQ., *plaintiff, Appearing Pro se*

JOHN K. DEMA, ESQ., *for Defendant*

ROSS, *Judge*

## MEMORANDUM
(June 20, 2001)

THIS MATTER is before the Court on defendant's motion for partial summary judgment on the complaint pursuant to Fed. R. Civ. P. 56 (c). Also *sub-judice* are plaintiff's motions to dismiss the defendant's counterclaim and for summary judgment on the complaint. For the following reasons, defendant's motion for partial summary judgment will be granted and plaintiff's motions will be denied.

The parties in this action shared a fiduciary (attorney/client) relationship from 1993 through 1998. Defendant/Client retained plaintiff/attorney on an hourly basis to pursue her claim for an annuity from the Virgin Islands Government Employee Retirement System ("GERS"), and the parties signed the hourly fee retainer agreement on December 16, 1993. Under the hourly fee retainer agreement, defendant paid a retainer of $250.00 and was required to pay all hourly charges at the conclusion of the litigation. The agreement did not specify the hourly rate; however, from 1993 to 1998, the plaintiff's customary hourly billing rate for legal services rendered was between $125 and $175.

On or about September 20, 1997, plaintiff spoke to defendant about modifying their hourly fee retainer agreement and entering into a "contingent agreement." During this meeting plaintiff explained to the

defendant how such an agreement works.[1]  A month subsequent to this meeting, he mailed the contingency agreement to the defendant for her signature. On October 30, 1997, and prior to defendant's signing of the contingency agreement, plaintiff attended a hearing on the defendant's motion for summary judgment in the GERS litigation. In his deposition plaintiff openly admits that it was at the close of this hearing that he learned that defendant had prevailed. He admits further in his deposition that he had notified defendant that they had prevailed.[2] plaintiff, nonetheless, alleges that the defendant signed the contingency agreement on November 27, 1997.[3] Several Months later, on April 23, 1998, the Territorial Court issued the written order granting the defendant's motion for summary judgment in the GERS litigation. Pursuant to the order, defendant was entitled to her husband's annuity, and was awarded her husband's accumulated monies in the Virgin Islands Government Employee Retirement System, in the amount of $94,558.19. Defendant was also entitled to receive future annuity payments of $2,618.16 per month for the remainder of defendant's lifetime. Defendant paid the

[1] In response to the question that plaintiff inform the defendant's attorney of every fact that was disclosed to Mrs. Gordon (defendant) in September 1997, relative to the work that had been done in the case and the additional risk that would justify a rescission of the hourly fee agreement to undertake the contingency agreement. Plaintiff responded: "I recall saying to Mrs. Gordon (defendant) that the matter had been pending for almost five years, and that I believe it's going to be getting into high gear at this point, and I asked her would she consider modifying our previous agreement and enter into what we call a contingent fee agreement. I explained to her how it works. I said to her that if we are unsuccessful, that the attorney would not be paid any money, and I said if we were successful, I would ask for a fee of one-third of the value of whatever we recovered. I don't remember she asked me any questions. If she did, I am sure I explained it to her satisfaction. Mrs. Gordon (defendant) agreed, as I recall, that she would do that. That she would not owe me anything, I think that appealed to her that she would not owe me anything if we lost. I indicated to her the fact that the plaintiffs did not intend to give up and that Mr. Marshack was very aggressive."

[2] He states: "I notified Ms. Gordon—in fact, I invited Ms. Gordon to come to the hearing, and when I called her later she says that she couldn't get out of her office to come so she wasn't there, and she was notified *I believe* in writing that we prevailed."

[3] The defendant contests that she signed it on November 27, 1997: she states that although she does not recall the exact day of signing the contingency agreement, she does recall that it was after the court had granted summary judgment; and that it was at plaintiff's specific request that she signed and dated it November 27, 1997.

plaintiff on August 10, 1998 one-third of the initial lump sum payment pursuant to the alleged contingency agreement.

plaintiff filed this action for debt and enforcement of the contingency agreement against the defendant to insure recovery of the remainder of his fees. Plaintiff claims that the defendant additionally owes the plaintiff one-third of the future annuity payments she receives — specifically requesting, $872.72 per month from August 1998 and monthly thereafter, plus interest from August 1998 to the date of payment. The defendant in turn filed her answer and a counterclaim alleging breach of contract, fraudulent misrepresentation, and breach of fiduciary duty. On April 23, 2001, the defendant filed a motion for partial summary judgment, relying upon *The Restatement (Second) of Contracts*, § 173, Modification of a Contract, seeking this Court rescission of the contingency fee agreement on the grounds that it is voidable by defendant because it is not on fair terms and defendant did not understand her legal rights when she signed it. Plaintiff filed motions to dismiss the defendant's counterclaim and for summary judgment on the complaint. In his motions, plaintiff, relying heavily upon *The Restatement (Second) of Contracts*, § 279, Substituted Contracts, surmises that the contingency agreement signed by the defendant on November 27, 1997 superseded the prior December 14, 1993 hourly fee agreement.

Thus, the essential issue for the Court to determine is whether the original (hourly) fee agreement entered into on December 16, 1993 was effectively modified by the parties on November 27, 1997 such that the contingency agreement is validly enforceable against the defendant. Obviously, plaintiff, as defendant's attorney for over five years, owed a fiduciary duty of trust to the defendant. Therefore, the Court, in finding whether the contingency fee agreement is valid, must critically analyze the circumstances underlying the modification and the reasonableness of the fee amount. *See McKenzie Construction, Inc. v. Maynard,* 758 F.2d 97, 20 V.I. 207 (3d Cir.1985). (A contingent fee contract is valid and enforceable only if it is fair, just and reasonable; it must be made in good faith, without suppression or reservation of fact, or of apprehended difficulties, and without undue influence).

plaintiff knew that modification of the existing hourly retainer agreement was not necessary to insure payment since under the existing agreement defendant was not obligated to pay for the services until the end of the GERS litigation. Moreover, plaintiff had discovered that they had prevailed at the summary judgment hearing of October 30, 1997. Therefore,

he was well aware that it was only a matter of time before he received full compensation for his services in the GERS litigation. On the other hand, he also knew that defendant had nothing to gain under the modified agreement, but substantially to lose. Consequently, the facts considered in the light most favorable to plaintiff clearly indicates that, under the circumstances, plaintiff was obligated to fully disclose all of the relevant facts regarding the modification and allow the client an opportunity to seek independent legal advice before agreeing to the modification.

■ Unless the lawyer demonstrates: full disclosure of all the relevant information, client consent based on adequate consideration, and client opportunity to seek independent legal advice before agreeing to the modification, such modification is presumptively fraudulent and unenforceable. *Durr v. Beatty,* 142 Ill. App. 3d 443, 491 N.E.2d 902, 96 Ill. Dec. 623 (Ill.App.Ct.1986). *See also Corti v. Fleisher,* 93 Ill. App. 3d 517, 417 N.E.2d 764, 49 Ill. Dec. 74 (Ill. App. Ct.1981) (any fee contract altered after lawyer client relationship established is "presumptively fraudulent"). The Court agrees with the holdings in these cases, and adopts the same standard with respect to the modification of fee agreements by attorneys in the territory.

■ Herein, therefore, plaintiff has the burden to overcome the presumption that the modified fee agreement (contingency agreement) was fraudulently obtained. After considering the plaintiff's account of the underlying circumstances surrounding the signing of the contingency agreement, it is readily apparent that it was dubious and highly improper. This Court finds that the surrounding circumstances under which the contingency agreement was signed, served to unfairly disadvantage the defendant. At the time that plaintiff alleges the defendant signed the agreement, plaintiff *knew* that he was not taking any risks and the litigation was no longer contingent. Thus, plaintiff was not only under a duty to disclose that they had finally prevailed, but also, to *explicitly* point out that if defendant chose to sign the contingency agreement she would in effect be agreeing to pay a much greater amount than they had previously arranged. Further, plaintiff had the affirmative duty to disclose what the full dollar amount *difference* would be under the then existing hourly fee arrangement and under the contingency agreement. The defendant's signature on the contingency agreement in this case, cannot singularly establish that she knowingly and willfully consented to the new contingency arrangement, absent evidence presented by plaintiff showing that he fully informed her of all the relevant facts, including the detrimental

consequences of signing after they had prevailed, and advised her to seek independent counsel prior to her signing of the document.

plaintiff has failed to present any persuasive evidence showing that he had indeed informed the defendant of the full ramifications of the contingency agreement on November 27, 1997 prior to her signing. Consequently, plaintiff has failed to meet his burden of demonstrating that he did not breach his fiduciary duty to disclose the full facts to the defendant. It is not surprising that the plaintiff is unable to prove full disclosure in this case; since, inevitably, such disclosure would have required that plaintiff overtly tell the defendant that he was deliberately modifying the agreement by ruse so that he could recover an exorbitant amount in fees far greater than he had negotiated under the existing hourly fee agreement.

This Court strongly admonishes the repetition of such unethical conduct. Enforcing the contingency agreement under these circumstances would be highly unfair. Particularly since, as plaintiff explained in his deposition, the defendant agreed to the contingency agreement almost entirely because she understood that if they *lost* she would not owe the plaintiff any fees. He states: "I think that appealed to her that she would not owe me anything if we lost." The facts overwhelmingly demonstrate that plaintiff admittedly knew there was no such risk or possibility at the time that the defendant was alleged to have signed the contingency agreement, and that plaintiff, nonetheless, failed to inform the defendant that once they had prevailed in the litigation no risk of losing existed. Under the circumstances, plaintiff failed to demonstrate that he fully disclosed all of the relevant facts, much less that he advised his client/the defendant to seek independent legal counsel before signing the contingency agreement.

Additionally, this Court holds, that even if the defendant had signed the contingency agreement before plaintiff had prevailed on the defendant's motion for summary judgment, the terms of the contingency fee agreement are in and of itself unreasonable. Indeed, the excessive fees charged by the plaintiff in this case are so unconscionable that equity mandates that the contingency agreement be rescinded in light of the grave injustice to the defendant.

It has long since been established that attorneys' fees, including attorney contingency fee arrangements, are subject to the reasonableness standard of Model Rule 1.5 (a) and its counterpart in the ABA Code of Prof. Resp., DR 2-106(A), (B). In *McKenzie Construction, Inc. v. Maynard*, 758 F.2d 97, 20 V.I. 207 (3d Cir. 1985), the appellate court

184

firmly established that in a civil action, a fee may be found to be unreasonable and therefore subject to appropriate reduction by the court without necessarily being so clearly excessive to justify finding of breach of ethics. *Id.* Additionally, the court held that an attorney has the burden of proof as to the reasonableness of his fee regardless of whether he sues for recovery or whether client initiates action against attorney for excessive fees. The reasonableness of an attorney's fee is to be determined on the basis of the circumstances that existed at the time the fee agreement was entered into. 20 V.I. at 212.

Disconcertingly, two of the local cases cited by the defendant in support of her argument involve cases wherein plaintiff/attorney Christian was found to have overcharged clients for excessive legal fees in violation of Disciplinary Rule DR2-106(A), and ordered to return the excess fees to his client. In *Allan A. Christian v. Mary Joseph*, 1987 U.S. Dist. LEXIS 15994, 23 V.I. 193 (D.Ct. App. Div. 1987), the appellate court affirmed the trial court's decision that a one-third contingency fee agreement was unreasonable where Attorney Christian had failed to tell his client, a 61 year-old widow, what her total legal fees were before having her sign the agreement. In *Christian*, moreover, the appellate court affirmed the rule established in *McKenzie Construction, Inc. v. Maynard*, 758 F.2d 97 (3d Cir. 1985) that an attorney has the burden of proving the reasonableness of his fees, even if the client is suing to recover fees already paid. *Christian* at 197. The appellate court goes as far as holding that while a court should be hesitant to intrude where there is an express contract, where, as here, an agreement is entered after the attorney-client relationship is well advanced and the litigation has neared completion, a court will impose a higher standard of proof on an attorney. 23 V.I. at 201.

In the case at bar, the parties had an on going attorney client relationship for five years prior to plaintiff's suggestion to the defendant that they modify their prior hourly fee agreement (since the case was "getting into high gear"). Therefore, consistent with *Christian*, plaintiff has a higher burden of proof to demonstrate that the attorneys' fees charged under the modified fee agreement (contingency agreement) in this case are not unreasonable.

The second case, *V.I. Bar Association Ethics and Grievance Committee v. Allan A. Christian, Esq.*, 24 V.I. 287 (D.VI. 1989), further reprimanded plaintiff for his lack of professional integrity: "this is not

185

only excessive, it is outrageous, and it explains why the profession of the law is held in such low esteem in the territory at this time. We cannot countenance such overcharging." 24 V.I. at 291. The district court held that plaintiff's attempt to increase the prior one-third contingent arrangement to 40% was unreasonable. The court found that 33% was more than adequate compensation for the time involved in obtaining a satisfactory settlement in the negligence action. *Id.*

It is patently clear to this Court that the contingency fee arrangement in this case is likewise highly unreasonable. The facts demonstrate without question that the matter involved a non-complex issue. Plaintiff obtained a favorable outcome at the October 30, 1997 hearing, after merely arguing a scant two-page summary judgment motion supported by one case. Surely, it is every attorney's dream to obtain a favorable outcome with such minimal effort. However, to excessively overcharge a client unjustifiably, as in this case, is unconscionable. Plaintiff candidly admitted that the case only required a mere 37 hours of his time. Therefore, it is appalling to consider that he would have the audacity to pursue an action to recover one-third of the defendant's monthly annuity payments having already received excessively more for his services at the end of the litigation than he was entitled to under the existing hourly fee retainer agreement, without once, even slightly, evincing remorse or awareness of the outrageousness of his acts. Subsequently, the Court has no alternative but to rescind the contingency agreement; and declare that the hourly fee retainer agreement entered into on December 16, 1993 remains effective between the parties.

Considering the facts in the light most favorable to the plaintiff, this Court holds that the contingency agreement is void. This Court finds that under the circumstances, plaintiff has inexcusably breached his duty of fiduciary trust to the defendant. Specifically, plaintiff violated Rule 1.5 of the Model Rules of Professional Conduct by auspiciously insisting on the modification of the fee agreement from an hourly basis to a contingency fee for his own benefit without fully disclosing material facts to the defendant, and in so doing plaintiff charged unreasonable fees.

Having found the contingency agreement between the parties void and unenforceable, the Court need only briefly address plaintiff's motions to dismiss the defendant's counterclaim and for summary judgment of the complaint. Since, the only basis for plaintiff's motions is the validity of the contingency agreement, plaintiff's motions must be denied.