**DENIECE M. RAINEY, Appellant/Plaintiff**
**v.**
**LEOLA HERMON, Appellee/Defendant**

S. Ct. Civ. No. 2010-0007

Supreme Court of the Virgin Islands

October 6, 2011

876

DENIECE M. RAINEY, ESQ., St. Thomas, USVI, *Pro se*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (October 6, 2011)

CABRET, J. Leola Hermon hired Deniece M. Rainey, an attorney, to assist her with certain legal matters. When Hermon failed to pay for that assistance, Rainey sued Hermon in Superior Court to collect the fees for the legal services she rendered to Hermon. The Superior Court ruled in favor of Rainey, but reduced the amount owed to Rainey without any evidentiary support. Because factual determinations made by a trial court must be tethered to evidence in the record, the Superior Court's unsupported determinations are clearly erroneous. Therefore, for the reasons that follow, we reverse the judgment of the Superior Court.

## I. FACTS AND PROCEDURAL BACKGROUND

In May 2006, Leola Hermon retained Deniece Rainey to assist her with a probate dispute involving real property located at No. 50 Smith Bay, St. Thomas, and owned by the estate of Hermon's deceased mother. The dispute arose following the death of Hermon's mother in 2002. Hermon lived with and cared for her mother on the property prior to her death, and continued living on the property after her mother died. However, the estate lacked sufficient assets to pay its debts, and as a result the property, under the supervision of the probate court, was set to be sold.[1]

---

[1] In fact, Hermon initially requested the sale of the property to satisfy the debts of her mother's estate, but after pre-qualifying for a loan Hermon sought to satisfy the estate's obligations herself and keep the property.

Hermon decided that rather than see her mother's house sold to a third party, she would attempt to acquire her siblings' interest in the house and pay the estate's debts herself. As one of her mother's seven children, Hermon was already a 1/7 owner of the property, and she succeeded in persuading five of her six siblings to assign their respective interests in their mother's estate to her, but was unable to acquire the final 1/7 interest from the estate of one of her brothers who died shortly after her mother. To further complicate matters, even before Hermon attempted to gain consent from her siblings, the mortgage holder, Bank of Nova Scotia, began a foreclosure action in the District Court of the Virgin Islands. In an attempt to save the property, Hermon sought a loan to pay off the balance of the note secured by the home, the estate's other debts, and the share of the estate owed to her deceased brother's estate.

To achieve her goal of saving the home, Hermon initially hired Rainey to represent her in the probate matter, as demonstrated by the retainer letter signed by both parties. However, the probate court refused to allow Rainey to replace the estate's existing counsel.[2] Rainey appealed this decision, but later moved the Appellate Division to dismiss the appeal. Although Rainey never became counsel for the estate, she still sought to achieve Hermon's goal of saving the home by working with the Bank of Nova Scotia to obtain a loan with which Hermon could purchase the house and by representing Hermon at the foreclosure proceedings. Ultimately, Hermon failed to obtain a loan sufficient to pay off the estate's debts and the house was sold.

Other than the initial retainer fee of $250.00 and a later payment of $300.00, Hermon never paid Rainey for her legal services. Once it became clear to Rainey that Hermon was unable to pay her bill, Rainey petitioned the probate court for payment of her legal fees from Hermon's share of her mother's estate.[3] The court denied her request. As a result, on August 12, 2007, Rainey filed this action in Superior Court seeking $16,449.70 for the legal services she rendered to Hermon. On August 6, 2008, both parties appeared *pro se* for a bench trial. Following the bench trial, the Superior Court entered a memorandum and judgment on

---

[2] In addition to filing a motion for substitution of counsel in an attempt to become counsel for the estate, Rainey also filed a motion to stay the sale of the property.

[3] Rainey did not bill Hermon for the time she spent asking the probate court to pay the legal bills.

December 23, 2009. The Superior Court awarded judgment in favor of Rainey, but did not grant Rainey the $16,449.70 she sought. Although Rainey billed Hermon for sixty-eight and a half hours of out-of-court time and three hours of in-court time, the court did not allow Rainey any compensation for the time she spent representing Hermon in the foreclosure action, eliminating four hours of out-of-court time and thirty minutes of in-court time from Rainey's bill. The court further reduced the amount of out-of-court time Rainey billed Hermon from sixty-four and a half hours to forty, explaining only that "much of Rainey's time out of court was not spent on strictly legal work, but on telephone calls to bank officials," and "[i]t is difficult to tell how many of these calls would be necessary in achieving the goal of the representation, namely to save the property." (App. 20.) Finally, the court did not allow Rainey to receive reimbursement for "normal overhead costs associated with running a law office," eliminating $732.20 from Rainey's bill. (App. 21.) Following the Superior Court's reductions, Rainey was awarded $9,625.00, $5.00 in costs,[4] and $2,538.36 in pre-judgment interest.

Rainey appeals the December 23, 2009 judgment, alleging that the Superior Court erred by reducing the amount owed to her and by interjecting a dispute as to the scope of Rainey's representation of Hermon. Rainey filed an untimely notice of appeal on February 3, 2010, but after receiving an extension of time from the Superior Court, Rainey filed a timely renewed notice of appeal on February 22, 2010.

## II. STANDARD OF REVIEW & JURISDICTION

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law."

The standard of review for our examination of the Superior Court's application of law is plenary, while the Superior Court's factual findings are reviewed only for clear error. *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I 322, 329 (V.I. 2007). In reviewing findings of

---

[4] The Superior Court credited Hermon with paying $100.00 of a $105.00 District Court docketing fee, thus allowing Rainey to collect only the $5.00 she paid toward the docketing fee.

fact for clear error we reverse if "the trial court's determination was 'completely devoid of minimum evidentiary support' or . . . it 'bears no rational relationship to the supportive evidentiary data.' " *Hodge v. McGowan*, 50 V.I. 296, 316 (V.I. 2008) (quoting *Daniel*, 49 V.I. at 329).

## III. DISCUSSION

Rainey asserts that the Superior Court erred in finding that: (1) the parties disputed the scope of services to be provided by Rainey to Hermon; (2) Rainey's appearance in the foreclosure action was unnecessary, unauthorized, and outside the scope of the agreement; (3) a significant portion of the time Rainey billed Hermon was unnecessary and not beneficial to Hermon; (4) Rainey should not receive compensation for certain administrative costs; and (5) Rainey charged Hermon for time spent asking the probate court to pay the bill out of Hermon's share of the estate.

■ When a client fails to pay an attorney's fees, that attorney may bring a breach of contract action to collect the unpaid fees. *See McQueen, Rains & Tresch, LLP v. CITGO Petroleum Corp.*, 2008 OK 66, 195 P.3d 35, 46 (2008); *see also* 23 Williston on Contracts § 62:1 (4th ed. 2002). In such an action, the contractual agreement established between the attorney and the client will usually control. *See McQueen, Rains & Tresch, LLP*, 195 P.3d at 46; *see also* 23 Williston on Contracts § 62:5 (4th ed. 2002) (explaining that "[a]greements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics."). However, the nature of the attorney-client relationship — a fiduciary relationship — is such that courts have a special interest in fee arrangements between attorneys and clients. *See McQueen, Rains & Tresch, LLP*, 195 P.3d at 47. Because of the special nature of the attorney-client relationship, some jurisdictions, including this one, use the court's inherent power to assess an attorney-client fee agreement for reasonableness. *See, e.g., Rojas v. Two/Morrow Ideas Enters.*, 53 V.I. 684, 696 (V.I. 2010); *McKenzie Const., Inc., v. Maynard*, 758 F.2d 97, 100-01 (3d Cir. 1985); *Maynard Steel Casting Co. v. Sheedy*, 2008 WI App 27, 307 Wis. 2d 653, 746 N.W.2d 816, 818 (2008); *see also* 23 Williston on Contracts § 62:8. Therefore, although a fee arrangement for legal services is a matter of contract between the client and the attorney, courts will

enforce only reasonable attorneys' fees, even if the contract itself is otherwise enforceable. *See Ryan v. Butera, Beausang, Cohen & Brennan*, 193 F.3d 210, 215, 217 (3d Cir. 1999); *Christian v. Joseph*, 23 V.I. 193, 197 (D. V.I. App. Div. 1987); *Christian v. Gordon*, 43 V.I. 179, 184-85 (V.I. Terr. Ct. 2001).

## 1. The record does not reflect that the parties disputed the scope of the contract or that the foreclosure action was outside of the contract's scope.

Rainey argues that the Superior Court clearly erred in finding that there was a dispute as to the range of services provided by Rainey to Hermon and that the services rendered by Rainey in the foreclosure action were outside the parties' agreement. Specifically, the Superior Court concluded that Hermon did not owe Rainey for the services Rainey provided Hermon in relation to the foreclosure action, because those services were outside the scope of the contract. In other words, the court ruled Hermon did not owe Rainey for the services she provided in relation to the foreclosure action, because there was no contract requiring such payment.

Under Virgin Islands law, to prove a breach of contract, a plaintiff must establish "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *See Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 134-35 (V.I. 2009) (citation omitted). At trial, Hermon contended that all of Rainey's services were for the estate, not for Hermon. In other words, Hermon's argument appears to be that no contract existed, because she did not hire Rainey to represent her as an individual. Indeed, Hermon argued that her mother's estate hired Rainey to represent the estate. Therefore, Hermon claimed that the estate should pay Rainey, not Hermon. The Superior Court "disagree[d] with Hermon's assertion that Rainey was retained only to represent the Estate and not to represent her individually." (App. 18.) The court found that "Hermon conceded that she had sought Rainey's assistance for her own personal interest of saving the property." (App. 19.) Therefore, the court concluded that "Hermon would be personally liable for Rainey's services, and not the Estate." (App. 19.)

After finding that a contract existed between Rainey and Hermon, the Superior Court analyzed the scope of the contract, and concluded that it included the work Rainey performed with regards to the probate matter. Specifically, the Superior Court concluded that the retainer letter

authorized Rainey's initial work in the probate matter, i.e. the motion for substitution of counsel, the motion to stay the sale of the property, and "a notice of filing the assignments of interest and powers of attorney with attachments." (App. 17.) The Superior Court also found that the initial agreement did not expressly authorize Rainey's other filings in the probate matter, the appeal of the denial of her motion to become counsel for the estate or Rainey's representation of Hermon in the foreclosure matter. Yet, the court determined that the parties either modified the original contract or formed a new contract "to provide for the additional services in [the] Superior Court to protect the property and the appeal to the District Court," because these services were "necessary to effect the original purpose of the contract, which was to prevent the property from being sold to a third party," and because Hermon "was clearly involved" in these actions. (App. 17-18.) However, the Superior Court found that the agreement did not include "any representation in the District Court in the foreclosure case," and therefore "[t]he hours that were spent in connection with [the foreclosure case] were outside of any agreement . . . and not authorized." (App. 18.) Thus, when calculating the proper amount of Rainey's bill, the court eliminated four out-of-court hours and one-half of an in-court hour from Rainey's bill for the time Rainey spent "representing Hermon in [the] foreclosure action." (App. 20.)

■ Based on the record, there is no evidence that Hermon thought that Rainey's participation in the foreclosure action was outside the scope of their agreed-upon representation or that Hermon disputed the notion that she intended for Rainey to represent her in the foreclosure proceedings. In fact, such a finding is contrary to the evidence. In a letter to the probate court, Hermon states "I . .. . got attorney Denise [sic] Rainey for representation in the foreclosure action in the District Court and the loan process at the bank." (App. 63.) In a second letter to the trial judge in this matter, Hermon states "I acknowledge that Atty. Deniece M. Rainey was hired in an effort to try to save the family home and that payment is due her." (App. 65.) At trial Hermon testified to the same, stating that "Ms. Rainey was retained before the sale of the property" and that "[i]n Ms. Rainey['s] time we were trying to save the property when we went to [sic] Bank of Nova Scotia." (App. 88.) Thus, every piece of evidence regarding the parties' intent in modifying or forming a new contract leads to the conclusion that Rainey's representation in the foreclosure

proceedings was within the scope of the contract, because Hermon agreed to and wanted Rainey to represent her interests in the foreclosure matter.

The Superior Court's only support for its determination that the time spent on the foreclosure action was outside the scope of representation is that Hermon was not a party to the action, and therefore the representation was unnecessary. However, Hermon's absence as a named party in the foreclosure action does not establish the parties' intent in modifying or creating a new contract or establish that Rainey's presence was unnecessary at the foreclosure matter. To the contrary, Hermon's various letters and testimony demonstrate that Hermon's intent was for Rainey to do anything and everything she could to save the family home, whether it be in probate court or monitoring the foreclosure sale in the District Court. Additionally, as the owner of 6/7 of whatever property passed through an estate whose only asset was being foreclosed upon and as someone attempting to acquire financing to purchase the property outright, Hermon had every incentive to maintain representation at the foreclosure proceedings.

On the other hand, the Superior Court did not refer to any testimony by Hermon that Rainey acted beyond the scope of their agreed-upon representation, nor did the Superior Court indicate how the time spent on the foreclosure action was unreasonable. Moreover, the Superior Court's determination that Rainey's representation of Hermon in the foreclosure case was beyond the scope of the contract contradicts its own finding that "Hermon in fact, believed that the agreement with Rainey was to save the property." (App. 18 n.6.) Because the Superior Court's determination that Rainey's participation in the foreclosure action was outside the scope of representation is devoid of evidentiary support, we conclude that the court clearly erred by eliminating the time Rainey spent on the foreclosure action from her bill.

## 2. The record does not support the Superior Court's determination that Rainey billed Hermon for unnecessary work.

Rainey also argues that the Superior Court clearly erred in finding that much of the time she spent was unnecessary and did not benefit Hermon. Specifically, the court concluded that Rainey's fees for communicating with the bank were unnecessary because it could not determine how many of these calls were necessary to save the property and as a result reduced the sixty-four and a half hours of out-of-court time remaining in Rainey's

883

bill following the court's elimination of four hours for the foreclosure representation to forty hours of out-of-court time.

██ ██ When an attorney or client seeks to enforce or challenge a contract for legal services, Virgin Islands local courts may review the attorney's fees for reasonableness and reserve the authority to deny any fee they consider unreasonable. *See McKenzie*, 758 F.2d at 101; *Joseph*, 23 V.I. at 196-97; *see also Gordon*, 43 V.I. at 184 (noting that "[i]t has long since been established that attorneys' fees . . . are subject to the reasonableness standard of Model Rule 1.5(a) and its counterpart in the ABA Code of Prof. Resp., DR 2-106(A), (B)."). Rule 1.5 of the American Bar Association's Model Rules of Professional Conduct, made applicable to all members of the Virgin Islands Bar by 4 V.I.C. § 32(f)(2)[5] and Supreme Court Rule 203,[6] "establishes the factors a court must consider when assessing the reasonableness of a contractual fee arrangement between a lawyer and a client." *See Rojas*, 53 V.I. at 696-97. Specifically, Rule 1.5(a) states that

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the

---

[5] Title 4, section 32(f)(2) states that "[t]he Supreme Court may adopt . . . the rules for . . . governance of the Virgin Islands Bar."

[6] "The Supreme Court, in furtherance of its inherent and statutory powers and responsibility to supervise the conduct of all attorneys who are admitted to practice before it, hereby adopts the ABA's Rules of Professional Conduct and Rules of Disciplinary Enforcement, superseding all of its other rules pertaining to disciplinary enforcement heretofore promulgated." V.I.S.Ct.R. 203(a). Previously the Model Rules of Professional Conduct were applied to the Superior Court through Superior Court Rule 303(a), which mirrors current Virgin Islands Supreme Court Rule 203(a), because the Superior Court was charged with the regulation of the Virgin Islands Bar prior to the formation of this Court. *See In re Application of Moorhead*, 27 V.I. 74, 89-90 (V.I. Terr. Ct. 1992) (holding that the 1984 amendments to the Revised Organic Act required a "court established by local law" to regulate the Bar, and since the Superior Court, known at that time as the territorial court, was the only court established by local law, it was the only court with authority to regulate the Bar.). During that time, the Superior Court applied the Model Rules of Professional Responsibility, specifically Model Rule 1.5(a), to its proceedings. *See Gordon*, 43 V.I. at 184. When this Court was formed, the Legislature passed 4 V.I.C. § 32, which transferred the obligation to regulate the Virgin Islands Bar to the Supreme Court. Although in this case it is largely academic, because Supreme Court Rule 203(a) and the now superseded Superior Court Rule 303(a) are functionally identical, the statutory mandate that this Court create rules for the "governance of the Virgin Islands Bar" requires that any rules of professional conduct adopted by this Court be applied in the Superior Court, as well.

following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

ABA Model R. Prof. Cond. 1.5(a).

Rainey submitted a bill to Hermon for sixty-eight and a half hours of out-of-court work and three hours of in-court work. As described in section one of this discussion, the Superior Court subtracted four out-of-court hours from Rainey's bill for her work in the foreclosure action, because those hours "were outside of any agreement between Rainey and Hermon and not authorized," leaving sixty-four and a half hours of out-of-court time. (App. 18.) In addition to this reduction, the Superior Court stated that "much of the time spent by Rainey was unnecessary and not beneficial to Hermon to protect her interests." (App. 20.) Specifically, the court noted that "much of Rainey's time out of court was not spent on strictly legal work, but on telephone calls to bank officials." (App. 20.) Unlike the foreclosure work, the court did not find that the telephone calls to bank officials were outside the scope of the representation, but instead stated "[i]t is difficult to tell how many of these calls would be necessary in achieving the goal of the representation, namely to save the property." (App. 20.) Then, without making any specific finding or pointing to any evidence to explain why or how many of the telephone calls to the bank officials were unnecessary, the court further reduced Rainey's bill from sixty-four and a half hours of out-of-court time to forty hours of out-of-court time.

■ Having analyzed the record, we find no evidence to support the Superior Court's reduction. Hermon never asserted that Rainey spent unnecessary time on her case or that any of the telephone calls with bank officials were unnecessary. Instead, Hermon testified that Rainey was hired to "save the property when we went to [sic] Bank of Nova Scotia."

(App. 88.) Hermon likewise represented to the probate court that Rainey was hired to assist in the loan process. Logically, an attorney attempting to prevent a bank from foreclosing on one of his or her clients by arranging for the client to pay the bank the money due on the home must communicate with that bank. Absent some evidence that some or all of the phone calls were unnecessary, the more logical inference is that all the phone calls to bank officials were necessary to save the property.

With no explanation, no application of the factors contained within Rule 1.5, and no evidentiary support for its conclusion that the calls were unnecessary, the Superior Court's arbitrary reduction of Rainey's bill by twenty-four and a half hours was clearly erroneous.

### 3. The Superior Court erred in determining that Rainey improperly charged Hermon for administrative costs.

The Superior Court also eliminated certain administrative costs totaling $732.20 from Rainey's bill. The court disallowed the costs, not because they were unreasonable or outside the scope of the contract, but because "they appear[ed] to be normal overhead costs associated with running a law office." (App. 21.) Rainey argues that this was an error, because the parties agreed that Hermon would pay for these expenses. Indeed, the retainer agreement signed by both parties states that Hermon "will be charged for administrative disbursements, such as postage, express mail service, telecommunication charges, court filing fees, governmental and other agency fees, messenger delivery and other transportation charges where applicable." (App. 41.)

██ ██ As described earlier in this opinion, the Superior Court does not possess the authority to alter an otherwise enforceable contract for legal fees, unless the fee is unreasonable. *See Rojas*, 53 V.I. at 696-97; *Ryan*, 193 F.3d at 215, 217; *Joseph*, 23 V.I. at 196-97. In this case, the Superior Court made no determination that the administrative costs were unreasonable. Similarly, the Superior Court made no determination that the administrative costs were outside the scope of the contract or that the contract was otherwise unenforceable. In fact, the contract expressly provided that Hermon would pay for these administrative costs. Absent a legally sufficient reason to disallow the administrative costs, we must conclude that the Superior Court erred in doing so.

## 4. The Superior Court did not reduce Rainey's bill for time spent requesting payment from the estate of Hermon's mother.

Finally, Rainey argues that the Superior Court clearly erred in finding that she charged Hermon for time spent asking the probate court to allow her to be paid from Hermon's portion of her mother's estate.

Upon learning that Hermon could not pay her bill, Rainey asked the probate court to allow Hermon's mother's estate to pay the legal bill, but the probate judge denied Rainey's request. Rainey did not bill Hermon for the time she spent preparing and asking the probate court to order payment of her legal bills. In fact, the bill submitted by Rainey does not include any charges for the work spent attempting to collect from the estate, and originated nearly two months before the motion seeking payment from the estate.

█ Rainey's confusion appears to stem from the Superior Court's statement that "any time that Rainey spent in asking that the [probate] Court pay for her representation of Hermon should not be paid for by Hermon." (App. 18.) However, despite this statement, when the Superior Court calculated Rainey's award it did not deduct any time from Rainey's bill for this purpose. Without evidence that the Superior Court reduced or eliminated time from Rainey's bill for asking the probate court to pay her legal fees, we conclude that the Superior Court committed no error.

### IV. CONCLUSION

Because the Superior Court did not reduce Rainey's bill for any time she spent requesting payment from Hermon's mother's probate estate, it did not err. However, the Superior Court's factual determinations that the foreclosure action was outside the scope of the contract and that Rainey billed Hermon for unnecessary work lack evidentiary support and are therefore clearly erroneous. Finally, the Superior Court erred in disallowing Rainey certain administrative costs, without finding that those costs were unreasonable or outside the scope of the contract. For these reasons, we reverse the judgment of the Superior Court and remand this action to the Superior Court for proceedings consistent with this opinion.